**Patti A. HEUSLE et al., Plaintiffs,**

**v.**

**The NATIONAL MUTUAL INSURANCE COMPANY et al., Defendants,**

**and**

**The United States of America, Involuntary Plaintiff or in the alternative, Defendant.**

**Civ. No. 78–1036.**

United States District Court, M. D. Pennsylvania.

Sept. 26, 1979.

As Amended Dec. 28, 1979.

---

8.  *See* note 2 supra.

Clifford A. Rieders, Williamsport, Pa., for plaintiffs.

Hager & Roesgen, Charles J. Tague, Jr., Williamsport, Pa., for defendant Travelers Insurance Co.

C. Edward S. Mitchell, Mitchell & Mitchell, Williamsport, Pa., for defendant National Mutual Insurance Co.

Harry A. Nagle, Lewisburg, Pa., for defendants Coast Guard and Dept. of HEW and USA.

## OPINION

MUIR, District Judge.

Patti A. Heusle and her parents, George and Joyce Heusle, filed this action against the National Mutual Insurance Company, Celina Group, (National Mutual) and the Travelers Insurance Company (Travelers) seeking recovery of certain insurance benefits to which Patti A. Heusle claims entitlement under policies of insurance issued on behalf of her parents and on behalf of Yvonne DiStasi. The United States of America, the United States Coast Guard and the United States Department of Health, Education and Welfare have been joined as involuntary Plaintiffs or in the alternative as Defendants. On June 14, 1979, the parties filed an agreed statement of facts which was supplemented on August 2, 1979. On June 14, 1979, Plaintiffs, Travelers and National Mutual filed motions for summary judgment. On June 18, 1979, Travelers filed a motion to enlarge its time to file a brief in support of its motion accompanied by a brief. All parties having concurred in the motion, the Court will grant it. On June 29, 1979, Plaintiffs and National Mutual filed briefs in support of their motions. On July 6, 1979, Travelers filed a brief in support of its motion and an addendum thereto was filed by Travelers on July 10, 1979. On July 16, 1979, Plaintiffs and National Mutual filed briefs in opposition to each other's motions. On July 23, 1979, Plaintiffs filed a brief in opposition to Travelers' motion and a brief in reply to National Mutual's brief in opposition to Plaintiffs' motion. On July 24, 1979, National Mutual filed a brief in response to Travelers' brief in support of its motion for summary judgment. On July 30, 1979, Travelers filed a brief in reply to Plaintiffs' brief in opposition to Travelers' motion. For the reasons which follow, the Court will issue an order granting National Mutual's motion and granting in part and denying in part Plaintiffs' and Travelers' motions for summary judgment.

The facts underlying Plaintiffs' claim, unlike the law to be applied in this case, are uncomplicated. On October 23, 1976, Patti Heusle was injured in an automobile collision while a passenger in a car operated by Yvonne DiStasi. Travelers had issued an insurance policy with George Heusle as the named insured. Yvonne DiStasi was the named insured under a policy issued by National Mutual. On May 19, 1977, Patti

Heusle notified both insurance companies of her claim pursuant to Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.106 (Pennsylvania No-Fault Insurance Act). Both companies have refused to pay no-fault benefits to Patti Heusle. At the time of the accident, Patti Heusle was on active duty with the United States Coast Guard. She was on leave visiting her family prior to commencing her work at a Coast Guard facility in California. Because of this status, a substantial amount of Patti Heusle's medical expenses have been paid by the Government. In addition, she received disability compensation of $24,000 and has been receiving and will receive monthly disability payments of $961.00 from the government so long as she is disabled.

Plaintiffs' claim for no-fault benefits is based on three theories. First, they allege that Patti Heusle is entitled to benefits under the Travelers' policy as a relative of George Heusle, the named insured. Second, they allege that if Patti Heusle is not entitled to benefits under the Travelers' policy, then she is entitled to benefits under the National Mutual policy pursuant to § 204(a)(3) of the Pennsylvania No-Fault Insurance Act as a passenger in DiStasi's car. Third, Plaintiffs have asserted claims on behalf of the United States alleging the United States is an insured under both policies or is a third party beneficiary under the policies. Plaintiffs had asserted a claim on behalf of the United States based on the Federal Medical Care Recovery Act, 42 U.S.C. § 2651, et seq. On February 20, 1979, the Court issued an order dismissing that claim.

■ It is the Court's view that Patti Heusle was an insured under the Travelers policy. National Mutual, therefore, is entitled to summary judgment. Section 204 of the Pennsylvania No-Fault Insurance Act provides that no-fault benefits shall be paid first by the victim's insurance company if the victim is insured under a no-fault policy. Although Patti Heusle was not the named insured, the Travelers policy provided protection for any relative of the named insured, George Heusle. Relative, in turn,

is defined by the policy as any person related to the named insured by blood who resides in the same household whether or not temporarily residing elsewhere. Prior to the time Patti Heusle enlisted in the Coast Guard, she resided with her parents. The parties agree that at the time Patti Heusle was injured she maintained no residence other than at her parents' residence. The Court, therefore, concludes that Patti Heusle was insured by Travelers' insurance policy. National Mutual would be liable to the Plaintiffs for Patti Heusle's damages only if Patti Heusle was not insured by Travelers. Since the Court determines that she was so insured, there is no basis on which to impose liability on National Mutual.

■ Travelers contends that § 206(a) of the Pennsylvania No-Fault Insurance Act provides that the government benefits received by Patti Heusle must be deducted from the amount to which she is entitled under the Pennsylvania No-Fault Insurance Act. Section 206(a) provides:

". . . [A]ll benefits . . . that an individual receives . . . from social security (except those benefits provided under Title XIX of the Social Security Act and except those medicare benefits to which a person's entitlement depends upon use of is so-called 'life-time reserve' of benefit days) workmen's compensation, any State-required temporary, nonoccupational disability insurance, and *all other benefits . . . received by . . . an individual because of the injury from any government*, unless the law authorizing or providing for such benefits or advantages makes them excess or secondary to the benefits in accordance with this act, shall be subtracted from loss in calculating net loss." (emphasis supplied)

Travelers contends that (1) the benefits Patti Heusle received on account of her service in the Coast Guard are included within the phrase "all other benefits . . received . . . from any government" and (2) the statute authorizing the payments, 10 U.S.C. § 1071 et seq. does not make the benefits excess or secondary to

the benefits provided by the Pennsylvania No-Fault Insurance Act. It is the Court's view that Travelers is correct.

*Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) requires that the Court apply Pennsylvania law in construing the Pennsylvania No-Fault Insurance Act. The Pennsylvania Supreme Court has not construed section 206(a) of the act. The Commonwealth Court of Pennsylvania, in *Erie Insurance Exchange v. Sheppard*, 39 Pa.Cmwlth. 30, 394 A.2d 1075, 1076–77 (1978) has construed this section as has the Court of Common Pleas of Philadelphia County, in *Bowdren v. State Farm Insurance Company*, 6 D&C 3d 292 (1977). In *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), the Supreme Court of the United States stated that decisions of lower state courts should be afforded some weight but that they are not controlling when the highest court in the state has not spoken on the point. *Accord National Surety Corp. v. Midland Bank*, 551 F.2d 21, 29 (3d Cir. 1977). The Court, therefore, will give due weight to these lower court decisions but is not bound by them. In any event, it is the Court's view that the facts of this case are distinguishable from the facts in *Erie Insurance* and *Bowdren*.

The Court notes that the language of § 206(a) is all-inclusive. Unless the government benefits are excess or secondary, all benefits received from any government must be subtracted from the amount recoverable under the no-fault act. Plaintiffs argue that the phrase "all other benefits" must be construed in light of the specific examples listed in the statute: social security, workmen's compensation, and state required temporary non-occupational disability insurance. It is Plaintiffs' position that only these government benefits available to an extremely large number of people were intended by the legislature to diminish the no-fault benefits received. Plaintiffs claim that benefits such as Patti Heusle received are related specifically to her employment by the Government and, therefore, are not benefits to be subtracted from no-fault benefits pursuant to § 206(a). This argument

was accepted by the courts in *Bowdren* and *Erie Insurance.*

It is the Court's view, however, that there is no basis in the statute for this added exception to § 206(a). The examples set forth in § 206(a) are by way of illustration but not of limitation. The exception suggested by Plaintiffs is contrary to the policy of the Pennsylvania No-Fault Insurance Act. Section 203 of the Pennsylvania No-Fault Insurance Act provides for a reduction in no-fault premiums if an insured obtains other insurance he designates as the primary source of benefits in the event of an injury covered by the No-Fault Insurance Act. In *Singer v. Sheppard*, 33 Pa. Cmwlth. 276, 381 A.2d 1007, 1012 (1978), the Commonwealth Court of Pennsylvania found that § 203 was intended to encourage people to purchase collateral insurance which in turn would reduce the risks borne by no-fault insurers presumably leading to lower insurance rates for all motorists. Similarly, § 206, by requiring recourse to government benefits before permitting the recovery of no-fault benefits, has the effect of reducing the risk which must be borne by no-fault insurers and presumably results in lower premiums for motorists. This goal is consistent with the stated policy of the Pennsylvania No-Fault Insurance Act: to provide adequate basic loss benefits at a reasonable cost to the purchaser of motor vehicle insurance. 40 P.S. § 1009.102.

Sections 203 and 206 are compatible because in each the legislature contemplated that benefits other than no-fault benefits would be the primary sources from which an injured person recovers. If a person purchases such insurance and designates it to be his primary source of recovery, § 203(c) provides that his no-fault insurance premiums must be reduced to reflect the anticipated reduction of basic loss benefits. If, however, the no-fault premiums are not reduced, a person carrying two types of insurance is entitled to receive benefits under both plans. In the case of government programs in § 206, however, there is no direct reduction in insurance premiums.

The Commonwealth Court in *Singer* held that this was a reasonable decision by the legislature in view of the fact that it would be difficult to calculate the appropriate premium reductions in the case of government mandated programs because of variables involved in determining whether a particular insured is covered under such a government program. *Singer v. Sheppard*, 33 Pa. Cmwlth. 276, 381 A.2d 1007, 1012 (1978). Although there are no direct rate reductions, the Commonwealth Court found that § 206 would lead to lower premiums overall because of the reduced risk faced by no-fault insurers. Further, the beneficiary of a government program does not purchase the protection as does one who purchases additional insurance as contemplated by § 203. Government programs are paid for from general revenues to which all taxpayers contribute. To the extent that the denial of no-fault funds represents a benefit to insurance companies, it is a benefit intended by the legislature and one which also inures to all motorists in the form of lower premiums.

This case is also distinguishable on its facts from *Erie Insurance*. The Government benefits involved in *Erie Insurance* were sick pay received by government employees. In that case, the sick pay benefits were exhaustible and the Commonwealth Court relied on that fact in reaching its decision. *Erie Insurance Exchange v. Sheppard*, 39 Pa.Cmwlth. 30, 394 A.2d 1075, 1077 (1978). The Commonwealth Court noted that exhaustible sick pay is similar to the medicare payments excluded from Section 206 because the medicare payments so excluded are also exhaustible. This distinction further reduces the persuasiveness of *Erie Insurance*.

The *Bowdren* opinion does not clearly indicate whether the wage continuation plan under which the plaintiff continued to receive his salary while he was injured was exhaustible. The insurance company in *Bowdren* had refused to pay the wage loss contending that § 206 was applicable. The Court of Common Pleas rejected this argument in part because of its interpretation that the only government benefit programs included within § 206 were general programs such as social security or workmen's compensation and in part because § 103 specifically includes as loss of income that which would have been lost but for any wage continuation plan. This indicates that the legislature did not intend to reduce no-fault benefits on account of a worker's wage continuation plan. In the above-captioned case, however, Sections 203 and 206 clearly evidence a legislative intent to reduce no-fault benefits when an insured receives government benefits which are intended to be primary.

■ Plaintiffs contend that Patti's Heusle benefits from the Coast Guard should not be deducted from her no-fault benefits because they arise out of an employer-employee relationship. There is no dispute that one reason Patti Heusle joined the Coast Guard was the benefit plan. It is the Court's view that this is irrelevant to the interpretation of § 206. First, the reason a person is entitled to government benefits is not relevant to the legislative purpose in excluding those benefits when calculating no-fault benefits. It is the fact that the Government benefits compensate the insured and, therefore, no-fault insurance is not needed for compensation that is behind the exclusion. Second, although the medical benefits were an inducement to join the Coast Guard, there was no direct cost to Patti Heusle for the benefits. It is irrelevant whether she may or may not have joined the Coast Guard if these benefits did not exist. The fact remains that the benefits were provided by the Government and like any government program, certain qualifications had to have been met for her to be eligible to receive benefits. In order to qualify for social security, a person must work for a minimum period of time. Similarly, in order to qualify for workmen's compensation one must be employed. It is immaterial that the qualification for this particular government program was a commitment to serve in the United States Coast Guard. Having complied with the requirements for membership in the program, Patti Heusle was entitled to, and did receive,

the benefits. For these reasons, the Court concludes that the payments Patti Heusle received from the United States constituted "benefits . . . received . . . from any government."

■ Plaintiffs contend that Patti Heusle's Coast Guard benefits are secondary to her no-fault benefits so that she is entitled to no-fault benefits because of the exception in § 206(a). The only evidence submitted in support of this contention is 10 U.S.C. § 1086(d) and 32 C.F.R. § 199.14. It is the Court's view, however, that neither of these sections is applicable in this action. Plaintiffs' failure to offer any evidence in support of their position that the Government benefits are secondary requires the Court to grant Defendants' motion for summary judgment.

Title 10 U.S.C. § 1086(a) authorizes the Secretary of Defense to contract for health benefits for certain persons. Subsection (c) defines those persons by reference to 10 U.S.C. § 1074(b). That section refers to a member or former member of a uniformed service who is entitled to retirement or retainer pay. There is no evidence that Patti Heusle was entitled to retirement or retainer pay at the time of her accident. Title 10 U.S.C. § 1086(c) also refers to persons named in 10 U.S.C. § 1076(b). That section, which is entitled "Medical and dental care for dependents: general rule," is applicable only to a dependent of a member or former member of a uniformed service. Patti Heusle is not a dependent of a member of a uniformed service but was herself a member of a uniformed service.

Sub-section (2) of 10 U.S.C. § 1086(c) also includes "a dependent of a member of a uniformed service who died while on active duty." Once again, Patti Heusle was not a dependent of a member of a uniformed service. Whatever the case may have been if Patti Heusle's benefits had been paid pursuant to a contract authorized by 10 U.S.C. § 1086, that section, and sub-section (d) thereof, have no bearing on the Court's decision in this case.

For the same reason, 32 C.F.R. § 199.14 cited by Plaintiffs is irrelevant to this case.

Title 32 C.F.R. § 199.1 states that part 199, of which 32 C.F.R. § 199.14 is a part, sets forth the policies and procedures of the Civilian Health and Medical Program of the Uniform Services (CHAMPUS) for dependents of active duty members of uniformed services, retired members of uniformed services, dependents of retired members of uniformed services and dependents of deceased active duty or deceased retired members of uniformed services. This regulation is inapplicable to Patti Heusle because she was not a dependent of an active duty member or a retired member of a uniformed service. Title 32 C.F.R. § 199.9 sets forth who is eligible for CHAMPUS benefits. It then lists the following people: retired member or former member of a uniformed service entitled to retirement pay; the spouse, widow or widower of an active duty member or retiree; and a child of an active duty member or of a retiree. Once again, it is clear that Patti Heusle does not fall within these provisions. Finally, 32 C.F.R. § 199.9(d) provides:

> "In those circumstances, where an active duty member is also a dependent of another active duty member: Dual Coverage, *i. e.* entitlement to direct care from the Uniformed Services Medical Care System and CHAMPUS is the result. Since the active duty status is primary and it is the intent that all medical care be provided an active duty member through the Uniformed Services Medical Care System, CHAMPUS eligibility in such "Dual Coverage" situations is therefore terminated as of 12:01 A.M. on the day following the day Dual Coverage commences."

This section makes it abundantly clear that Patti Heusle's right to government benefits does not arise under 32 C.F.R. § 199.

■ When a motion for summary judgment is made, the party opposing that motion must come forward with evidence to demonstrate that there is a factual issue with respect to any issue as to which it has the burden of proof. In this case, Plaintiffs had the burden of showing that the Government benefits provided Patti Heusle fall

within the exception in § 206(a) of the Pennsylvania No-Fault Insurance Act. Plaintiffs have failed to discharge this burden of proof and Travelers and National Mutual are entitled to summary judgment.

■ The Court finds Plaintiffs' contention that the United States is either an insured under the Travelers policy or a third party beneficiary thereof to be without merit. If Plaintiffs' contention were correct, then there would be no purpose to § 206 of the Pennsylvania No-Fault Insurance Act. Plaintiffs would have this Court construe the Travelers policy to provide payment in the same circumstances in which the legislature has determined that the no-fault insurer need not pay, namely when the insured receives government benefits. Convenient maxims of construction, such as "ambiguities in contracts should be construed against the draftor" or "insurance policies should be construed in favor of the insured" do not warrant a finding for Plaintiffs in this case.

Plaintiffs rely on *Government Employees Insurance Company v. Rozmyslowicz*, 449 F.Supp. 68 (E.D.N.Y.1978), *United States v. Leonard*, 448 F.Supp. 99 (W.D.N.Y.1978) and *United States v. Government Employees Insurance Company*, 330 F.Supp. 1097 (E.D.N.C.1971) in support of their position. It is the Court's view, however, that those cases are distinguishable from this case. In each case, the courts relied on language in the insurance policies to justify their decisions that the Government was either an insured under the policy or a third party beneficiary thereof. The Travelers insurance policy in effect at the time of the accident includes a provision for the reduction of payments on account of certain government benefits. The language in the policy paraphrases the language in § 206(a) of the Pennsylvania No-Fault Insurance Act. This clearly indicates that the Travelers policy does not contemplate the government paying the benefits as an insured or as a third party beneficiary of the insurance contract. The language in the policy is completely consistent with the statutory scheme which envisions relying on benefits provided by other than no-fault insurers if they are adequate to compensate the victim.

The Court is of the view that it is appropriate to comment on Plaintiffs' attempt to use certain definitional sections of the insurance policy as proof that the Government is either an insured or a third party beneficiary. Unlike many insurance policies, the Travelers policy is written in language which is comprehensible to laymen. Insurance companies should be encouraged to write their policies in readily understandable language. A company should not fear that by simplifying its policy it runs the risk of incurring obligations not contemplated by the no-fault statute or not reasonably expected by the parties. The Travelers policy, in addition to being clearly written, also explicitly provides for the reduction of benefits contemplated by § 206(a) of the no-fault act.

Section 206(a) provides that government benefits must be subtracted from the otherwise available no-fault benefits in determining Travelers' liability. In addition, Plaintiffs claim that Patti Heusle is entitled to wage continuation benefits, although the record in this case does not indicate clearly whether Plaintiffs are entitled to this relief. Counsel for Plaintiffs and Travelers shall attempt to agree on the amount of Travelers' liability, including interest as provided in § 106(a)(2), and shall submit within 30 days of the date of this opinion a proposed judgment. If they are unable to agree, each party shall submit its proposed judgment accompanied by a brief explaining why the Court should adopt it at the end of the 30-day period. Each party shall have 15 days from the date its opponent's proposed judgment is submitted in which to file a response.

■ Section 107 provides for an award of attorney's fees on behalf of a successful plaintiff. Inasmuch as no evidence has been presented as to the reasonable value of Plaintiffs' attorney's services, the Court will not at this time enter an order respecting attorney's fees.