509 A.2d 358

Carroll R. BOSWELL, Appellee at No. 892 PGH 85,
Appellant at No. 943 PGH 85,

v.

SOUTH CAROLINA INSURANCE COMPANY, and the Travelers Insurance Company, Appellee at No. 943 PGH 85.

Appeal of SOUTH CAROLINA INSURANCE COMPANY,
Appellant at No. 892 PGH 85.

Superior Court of Pennsylvania.

Submitted Jan. 15, 1986.

Filed May 5, 1986.

110

Gilbert M. Coogler, Beaver, for appellant (at 892) and appellee (at 943).

James Cole, Pittsburgh, for appellant (at 943) and appellee (at 892).

Philip A. Faix, Jr., Pittsburgh, for Travelers, appellee.

Before CAVANAUGH, OLSZEWSKI and KELLY, JJ.

KELLY, Judge:

This appeal is from an Order of the Court of Common Pleas of Allegheny County in an action for recovery of lost wages under the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 et seq. (herein after the No-Fault Act) entered in favor of plaintiff/appellee Carroll R. Boswell and defendant/appellee The Travelers Insurance Company (herein after Travelers) and against defendant/appellant South Carolina Insurance Company (herein after appellant). Appellee Boswell seeks recovery from appellant, or in the alternative, from Travelers, of the amount of his wage loss resulting from his accident and injury sustained July 1, 1982 not reimbursed by his employer, the Federal Government. We affirm the lower court order for the reasons discussed below. The facts are as follows:

Carroll R. Boswell suffered injuries on July 1, 1982 in a motor vehicle accident which occurred in Pennsylvania while in the course of his employment as a U.S. Postal employee. Boswell at this time did not own an auto. Plaintiff's son, Carroll L. Boswell (herein after son), a member of the U.S. Army, did own a car, which at the time of the accident was insured by appellant. Appellee's son was stationed in Korea at the time of the accident; prior to service in Korea, he had been stationed at Fort Bragg, North Carolina.

Son acquired his car while stationed in North Carolina and had purchased insurance for the car, listing the principal garage for the car as the 21st MP Company, Fort Bragg, North Carolina. When the son was reassigned to duty in Korea, he notified Peggy Norton, agent for appellant insurance company, of his new assignment and of the fact that he would be garaging the car at his father's home in Pittsburgh, Pennsylvania. Appellant's agents changed the son's policy to reflect the new principal garage for the car.

A brief trial was held on March 20, 1985, and certain exhibits, depositions, transcripts and stipulations were entered into the record.[1] The Honorable I. Martin Wekselman entered a non-jury verdict in favor of Boswell, and in favor of Travelers and against appellant. Appellant filed timely post-trial motions; Boswell filed timely motions to protect his claim against Travelers.

Section 204 of the No-Fault Act delineates the basic procedure for victims seeking compensation for injuries sustained in the course of their employment. The victim must first seek basic loss benefits from his employer, then from his personal automobile insurance carrier, if any, then from any automobile insurance carriers covering members of his household, and finally from the Pennsylvania Assigned Claims Plan. In this case the state claims plan designated Travelers as its insurance carrier.

Appellee recovered all his medical no-fault benefits from his employer, the U.S. Postal Service, and two-thirds ($\frac{2}{3}$) of his wage loss from the U.S. Department of Labor, the federal workmen's compensation equivalent. Since we find that the appellee was covered by the automobile insurance carrier of a member of his household, we find no need to hold Travelers liable as designated carrier under the Pennsylvania Assigned Claims Plan. Therefore, on this issue, we affirm the trial court decision.

1. Both defendants have stipulated that plaintiff is entitled to the maximum amount of allowable wage loss under Pa. No-Fault Motor Vehicle Insurance Act, plus interest.

Appellant raises two issues on appeal: whether the trial court erred in refusing to give effect to pertinent sections of the policy "providing coverage for an out-of-state automobile accident only if the accident occurs in a state other than the state in which the covered automobile is principally garaged"; and whether the trial court misapprehended Pennsylvania law by finding appellee's son was "in residence" in his father's Pittsburgh home at the time of the accident. (Appellant's brief at 7).

Appellant argues that the policy issued to appellee Boswell "does not provide coverage in the situation in this case where the accident has occurred outside of the state in which the policy was written, but in the same state (Pennsylvania) where the automobile is principally garaged.... An automobile insured in one state but principally garaged in another state at all times does not present an insurable risk." (Appellant's brief at 8.) Appellant refers the court to page three (3) of the insurance policy in support of its contention.

An examination of the policy and the "Out of State Coverage" section beginning on page 3 reveals the following:

OUT OF STATE COVERAGE If an auto accident to which this policy applies occurs in any state or province other than the one in which your covered auto is principally garaged, we will interpret your policy for that accident as follows:

If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

No one will be entitled to duplicate payments for the same elements of loss. (N.T. 228a).

There is no exception listed for automobiles garaged outside of the state where the policy was written.[2] In fact, careful perusal shows that no such exception is expressed anywhere within the policy.

Since the language of the contract does not express such a reservation as appellant claims, our concern on review must be limited to a determination of whether Pennsylvania is the state or province where the auto was principally garaged, whether the policy period was still in force at the time of the accident and whether the accident occurred within the United States, Canada or the Virgin Islands. If so, the policy applies, and appellant is liable.

■ After reviewing the record, we must answer all three questions in the affirmative. The named insured, appellee's son, gave notice to his insurance agent that there was a change in address of the principal garage of his car. According to uncontroverted testimony the appellant's agent not only had notice that the car was being relocated to Pittsburgh, Pennsylvania, but orally agreed to the relocation. The record also discloses that the agent had the Declaration Page of the policy changed to reflect the new address for the auto's principal garage. (N.T. 223a). The agent assured the named insured that the car would continue to be covered until the policy expiration date in *April 1983*. (N.T. 6/23/83, 43a). Thus, we find evidence to affirm the trial court finding that the car was principally garaged in Pennsylvania, as agreed to by appellant, that the policy was in effect at the time of the accident in July 1982, and as was stated, *infra*, that the accident did occur within the United States. As no exceptions exist to bar coverage, we find that appellant insurance company is liable on its policy.

**2.** The accident did occur in Pennsylvania which does have: "2. A compulsory insurance or similar law ..." But since we find, infra, that the accident did not occur out of the state where the covered auto was principally garaged this section does not apply.

Appellant argues in the alternative that even if we find the policy adequate security for the automobile, we should give full effect to the policy provisions limiting coverage of auto accidents occurring in no-fault jurisdictions. (Appellant's brief at 9). That provision is contained in the "Out of State Coverage" section, as discussed above. We have already decided that the plain language of the contract when applied to this fact situation discloses the accident did not occur out of the state where the auto was principally garaged, but occurred in Pennsylvania where the auto was garaged. Therefore, we find appellant's argument to be without merit. (*See, Talley by Cronin, Jr. v. Commercial Union Insurance Company*, 587 F.Supp. 976, *aff'd* 760 F.2d 261 (E.D.Pa.1984), (out of state coverage provision does not apply where victim, car's principal garage and accident all occur in Pennsylvania).

Appellant's second issue on appeal is whether appellee's son, Carroll L. Boswell, was "in residence" in Pennsylvania, so as to provide coverage to his father under the terms of the Act.

The No-Fault Act, 40 P.S. § 1009.103, defines "insured" as follows:

(A) an individual identified by name as an insured in a contract of basic loss insurance complying with this act; and

(B) a spouse or other relative of a named insured, and a minor in the custody of a relative of a named insured if

. . .

(ii) in residence in the same household with a named insured.

An individual is in residence in the same household if he usually makes his home in the same family unit, even though he temporarily lives elsewhere.

Thus, the appellee's son, as the named insured, provides coverage for his father if appellee is a relative in residence in the same household with his son.

"Household" has been defined as "those who dwell under the same roof and compose a family." *Drake v. Donegal*

*Mutual Insurance Co.,* 422 F.Supp. 272 (W.D.Pa.1976), relying on Webster's Dictionary, 2d ed. Similarly, the court in *Colosimo v. State Automobile Mutual Insurance Co.,* 9 D. & C.3d 438 (1979), relied on Webster's to define "relative" as one "connected by blood or marriage." Appellee is clearly a relative (of his son), and is a member of the same family. It remains to be determined if the two "dwell under the same roof" or are "in residence" together.

Appellant argues that despite the definition the Act provides, the definition of "in residence" should be read in accordance with the prior common law holdings defining "resident" and/or "domiciliary". An historic legal distinction divides the two terms and they are not interchangeable. *DuPuy's Estate,* 373 Pa. 423, 427, 96 A.2d 318, 319–20 (1953). Domicile is "the place where a person has his true, fixed, permanent home and principal establishment." *McKenna v. McKenna,* 282 Pa.Super. 45, 48, 422 A.2d 668, 669 (1980). Even if the person cannot state an intention to abide in that place permanently, "the domicile of a person is the place where he has voluntarily fixed his habitation with a present intent to make it either his permanent home or his home for the indefinite future." *In re Estate of McKinley,* 461 Pa. 731, 734, 337 A.2d 851, 853 (1975). The distinction is that while residence is a physical fact, domicile is a matter of intention. *Laird v. Laird,* 279 Pa.Super. 517, 520, 421 A.2d 319, 321 (1980).

By comparing the common law definitions with the statute, it becomes obvious that the meaning the legislature conferred upon the term "in residence" bears less resemblance to the common law term "residence" than it does to "domicile". Neither domicile nor Section 103 of the No-Fault Act require physical presence, and both imply an intent to return to one habitation after temporary absences. Thus, appellant's contention that we read "in residence" as equivalent to residency is not consistent with the logical inferences of the legislatures' own language. An examination of the legislative history of the No-Fault Act discloses that the definition of "insured" in Section 103 was lifted

verbatim from the proposed National No-Fault Motor Vehicle Insurance Act, S. 354, 93rd Cong., 2d Sess., May 1, 1974. Subsection (A), defining the named insured, was rewritten, but subsection (B), defining unnamed insured persons, including relatives "in residence", was never amended. The definitional section was never subject to debate, but it is clear from the final debate on the Act as a whole that the Act was "a scissors and paste bill which has been taken, to a substantial extent, from the legislation pending in the national Congress. It has been put together in a hazardous fashion". Senator Ammerman, Senate Consideration of Calendar H.B. 1973 (Pr. 3495). The National Conference of Commissioners of U.S. Laws similarly drafted a Uniform Motor Vehicle Accident Reparations Act, August 4-11, 1972. Their definition of "person residing in the same household" is identical both to the national proposed act and the Pennsylvania Act. Their Comment states:

> The parts of the definition which refer to a "relative" of a named insured are adapted from automobile policies. The term includes relatives by marriage as well as blood relatives. No attempt, however, is made to spell out the myriad details of consanguinity, affinity, and adoption which qualify one as a relative.

> .     .     .     .     .

> The last sentence, dealing with the family members who temporarily live elsewhere, covers such situations as the college student residing away from home during the school year.

We find no practical difference between students temporarily living away from home, and military personnel, serving their country, who are on assigned duty away from home.

■ From the information the legislature utilized in drafting the Act, it seems the legislature intended its language to be interpreted as would similar legislation being drafted contemporaneously to the Act. We must conclude that the legislature had no intent to make its definitions synon-

ymous with common law terminology.[3] Therefore, we reject appellant's interpretation of the Act.

The determination of appellee's residency status for purposes of the Act constitutes a mixed question of law and fact and, therefore, the trial court's finding is reviewable by this court. *Stambaugh v. Stambaugh,* 458 Pa. 147 at 151-2, 329 A.2d 483, at 486 (1974); *Watson v. Watson,* 243 Pa.Super. 23, 364 A.2d 431 (1976). A court must consider objective factors besides an individual's assertion of domiciliary intent when making its determination. *Shishko v. State Farm Ins.,* 553 F.Supp. 308, *aff'd* 722 F.2d 734 (E.D.Pa.1982). We find after review of the record that the trial judge was apprised of the following facts:

> Appellee's son, while in the army, maintained his own bedroom in the family residence in Pittsburgh and kept possessions there. (N.T. 6/28/83, 41a).
>
> Each time the son was given leave he returned to his father's Pittsburgh home. (N.T. 6/28/83, 27-28a).
>
> Son was registered to vote in Pennsylvania and did not re-register to vote in North Carolina. (N.T. 6/28/83, 34a).
>
> While in the service Boswell did not maintain or establish his own habitation but was stationed and lived on base in the barracks. (N.T. 6/28/83, 360-7a).
>
> After his return from service in Korea he again lived in barracks. (N.T. 6/28/83, 41a).
>
> Son chose to garage his car in Pittsburgh rather than leave it at Fort Bragg.

Only one other court in this Commonwealth has examined a fact situation where the issue was whether a relative, enrolled in the military, was a relative "in residence" for purposes of the No-Fault Act. In *Heusle v. National Mutual Insurance Company,* 479 F.Supp. 274, *aff'd,* 628

---

**3.** Several years ago, referring to the word as used in another statute, Judge Goodrich used the following apt language: "... The words 'resident' and 'residence' have no precise legal meaning although they are favorite words of legislators. Sometimes they mean domicile plus physical presence; sometimes they mean domicile; sometimes they mean something less than domicile." *Willenbrock v. Rogers,* 255 F.2d 236, 237 (3rd Cir.1958).

F.2d 883 (W.D.Pa.1979), the plaintiff, while on leave from active duty and living with her parents, was injured in an auto accident. The court found plaintiff to be a member of her family household "in residence" at the time of the accident. Appellants would have us distinguish *Heusle* factually, because in *Heusle* the plaintiff was physically present in the household, while in this case the named insured son was absent on duty in Korea. To distinguish the cases in such a manner would be to ignore the language of the statute, which clearly does not require either the named or unnamed insured to be physically present in the household at the time of accident. The statute merely requires the unnamed insurance claimant to *usually* be "in residence" in the household.

For instance, in *Miller v. USF & G Company*, 28 D. & C.3d 389 (1983), the unnamed insured was the minor son of divorced parents and was found to be "in residence" in the households of both parents even though he physically was living with his mother at the time of the accident. The court found that the minor son was covered by his father's policy, finding no need of physical presence for compliance with the statutory provisions of Section 103.

▆▆▆ Although we do not accept as binding the common law definition of residency, we do find persuasive the reasoning utilized in various cases which have explored the issue of the residency status of persons enlisted in the military service. A service person's domicile generally remains unchanged while that person is temporarily stationed in another state on active duty. *Wallace v. Wallace*, 371 Pa. 404, 89 A.2d 769 (1952). A service person's domicile is presumed to be the domicile as of his time of enlistment. *Turek v. Lane*, 317 F.Supp. 349 (E.D.Pa.1970). Military persons have no choice in habitation, hence in domicile, except where permitted to live off-post. *Sage v. Sage*, 11 Cumberland L.J. 108 (1960). But military personnel may acquire a new domicile if circumstances show an intent to abandon the original and adopt a new domicile. *Zinn v. Zinn*, 327 Pa.Super. 128, 475 A.2d 132 (1984).

■ The only act appellee's son engaged in while in North Carolina which would arguably imply domiciliary intent was the purchase of automobile insurance and the listing of the principal place of garaging the car as the Fort Bragg barracks, North Carolina. This sole act is not sufficient indicia either of domiciliary intent or of intent to abandon his Pittsburgh family "residence" as residence is defined in the Act. Therefore, we uphold the trial court and find appellee was "in residence" with his temporarily absent son in the Pittsburgh household.

We thus affirm the trial court holdings on both issues presented to us for review.