## NATIONWIDE MUTUAL INSURANCE COMPANY

v.

**Dawn DIEHL and Gary Gallagher, Administrator of the Estate of Marlene Gallagher.**

**Civ. A. No. 89-8189.**

United States District Court, E.D. Pennsylvania.

Nov. 20, 1990.

Edward J. Carney, Jr., Media, Pa., for plaintiff.

J. Michael Sheridan, Kassab, Archibold, Jackson & O'Brien, Media, Pa., for defendants.

### MEMORANDUM UNDER FED.R.CIV.P. 52(a)

LUDWIG, District Judge.

This declaratory judgment action was tried non-jury. The issue is whether plaintiff Nationwide Mutual Insurance Company owes insurance benefits to the estate of Marlene Gallagher, deceased, under a policy of insurance issued to her daughter, defendant Dawn Diehl. Specifically, Nationwide asserts that decedent did not regularly reside in her daughter's household at the time of her fatal accident. If not, she was not an "insured," which would preclude stacking of underinsured motorist benefits under the Motor Vehicle Financial Responsibility Act or under the terms of

the insurance policy. 75 Pa.C.S.A. § 1701 *et seq.*[1]

### I.

The following facts are part of a final pretrial stipulation or were not disputed at trial:

On October 19, 1988 Marlene Gallagher while operating her daughter's automobile was killed in a two-vehicle collision.[2] Her owner's card gave an address of 111 Providence Road, Studio 6, Morton, Pennsylvania. Her daughter Dawn's address was Apartment 810, 1120 Eddystone Avenue, Eddystone, Pennsylvania.

As a result of the accident, Allstate Insurance Company, the other driver's insurer, paid Marlene Gallagher's estate $49,250. Thereafter, Nationwide also paid the estate $25,000 as underinsured benefits on the car that she was driving. However, Nationwide refused to stack the underinsured motorist benefits based on Dawn Diehl's two other insured cars, claiming that her mother did not qualify as a resident relative under the policy.

On July 1, 1988 decedent leased the apartment at 111 Providence Road. The apartment's electric, telephone, and cable television service remained in operation until after her death, and her mail delivery there was not curtailed until January, 1989. The same address was listed on her checking account and appeared on bank statements received by the estate. Her employment records, including a life insurance policy, contained that address. The records of Dr. Edward Russell, her treating physician for an injury for which she was hospitalized from August 30, 1988 to September 23, 1988, listed that address, as did a medical assistance form completed by decedent on October 7, 1988. Her death certificate also gives that address.

On August 9 and September 8, 1988 decedent made $300 rental payments on the

---

1. Jurisdiction is diversity. 28 U.S.C. § 1332. Declaratory judgment lies. 28 U.S.C. § 2201. *See Lyncott Corp. v. Chemical Waste Management, Inc.,* 690 F.Supp. 1409, 1414 (E.D.Pa. 1988).

2. Until October 7, 1988 the automobile had been owned by Marlene Gallagher. On that date she transferred ownership to her daughter, who added the vehicle to her automobile insurance policy with Nationwide.

Providence Road apartment. Her $300 check to Robert D'Agastino, the owner of both the Providence Road apartment and her daughter's Eddystone apartment, dated October 3, 1988, contains the notation "October rent."

## II.

The following facts are found from the evidence:[3]

With the exception of July and August, 1988 decedent did not live alone for at least the previous 10 years. Beginning in 1977, she resided with her daughter Charlene McKenzie in Malvern for approximately two years; with her daughter Dawn in an apartment in Eddystone for a few months; with a family in Wynnewood as a live-in housekeeper for one year; with her son Gary in Malvern for approximately five months; with Dawn again at another Eddystone apartment for one year; and, after the two months at the Providence Road apartment, with Dawn a third time.

On this last occasion, in late August, 1988, decedent moved back to her daughter's Eddystone apartment, saying she did not want to live by herself and was not feeling well. On August 30, 1988 she was hospitalized for emergency surgery at Crozier–Chester Medical Center in Delaware County. After her discharge on September 23, 1988 she lived with her daughter until her death on October 19.

While hospitalized, decedent told her son Gary that upon discharge she would be living with Dawn. She asked him to help move her furniture out of the Providence Road apartment. When she moved in with Dawn, she brought her clothing, plants, jewelry and other personal items required for her immediate needs. She planned to have the furniture stored when she felt better.

In late August, 1988 the D'Agastino apartment manager, who was responsible for recording rental payments for both the Eddystone and Providence Road apartments, received a call from decedent. She made the following note in the rent sheet log book: "Out 9/1 without notice. Belongings to stay one month, unless we re-rent. Moved back to A–10 Creek Bank." A–10 Creek Bank is Dawn's apartment.

According to the manager's records, October rent for the Providence Road apartment was paid. The rent sheet notation reads: "Gallagher, 300, 10/5, out. Died 10/19/88."

The arrangement between the manager and decedent was that as long as decedent's possessions remained in the apartment, she would have to pay rent. The manager told decedent that she would attempt to re-rent the apartment and obtained permission to show the apartment. If a tenant was found, the manager would have removed decedent's belongings and stored them at the latter's expense.

The fatal automobile accident occurred at 3:40 p.m. on October 19, 1988. Dawn was not notified until between 9:00 and 10:00 that night.

## III.

The Pennsylvania Motor Vehicle Financial Responsibility Law defines an "insured" as a spouse or other relative of the

---

**3.** The evidentiary burden of production rested with Nationwide. Inasmuch as Nationwide initiated this action to obtain declaration of noncoverage, accepted the burden of going forward, and did not argue the issue until raised *sua sponte* after trial, it retained the burden of proof. *See Liberty Mutual Insurance Co. v. Sweeney*, 216 F.2d 209, 211 (3d Cir.1954) (where plaintiff insurer in declaratory judgment action introduced evidence as in any normal proceeding, it retained the burden of proof); *Pacific Portland Cement Co. v. Food Machinery & Chemical Corp.*, 178 F.2d 541, 547 (9th Cir.1949) (having given "the impression to their opponent and to the court ... that they are going forward with the evidence which it is their duty to produce [plaintiff] cannot very well insist that, in reality, they assumed a burden which was not theirs"); 6A Moore's Federal Practice ¶ 57.31[2] ("Where the insurer seeks a declaration of noncoverage as to a particular accident, the insurance company should ... experience no technical difficulty in producing proof of the facts it asserts.... Since no policy or technical consideration dictates a change in the general rule, we believe that in these cases the plaintiff should bear the usual burden of proving his prima facie case"); Annotation, "Burden of proof in actions under general declaratory judgment acts," 23 A.L.R.2d 1243 (1952).

named insured "[i]f residing in the household of the named insured." 75 Pa.C.S.A. § 1702. Nationwide's policy defines a relative insured as "one who regularly lives in [the insured's] household." Joint exh. 1, ¶ 9. The policy is consistent with the language of the Act.[4]

The sole issue in this case is whether decedent regularly resided in her daughter's household at the time of her death. Defendants argue that the question of residence is resolved at least in part by reference to decedent's intention to live in Dawn's home. *Boswell v. South Carolina Insurance Co.*, 353 Pa.Super. 108, 118, 509 A.2d 358, 363 (1986) (a court must consider the "individual's assertion of domiciliary intent" when determining residency status). Defendant's concern appears to be the amount of physical indicia indicating that decedent continued to make her actual residence in her Providence Road apartment. Plaintiff counters that because *Boswell* involved a claim under the repealed No–Fault Act,[5] its reasoning is not binding here. *Amica Mutual Insurance Co. v. Donegal Mutual Insurance Co.*, 376 Pa.Super. at 115, 545 A.2d at 346 (policy language identical to MVFRL limits coverage to those who "actually reside" in the insured's household, a physical fact, and therefore person's intention to live at a particular place in the future is not relevant).

"As a federal court exercising diversity jurisdiction, we are bound in this case to follow the law as decided by the highest court of the [s]tate.... The decisions of lower appellate courts may be persuasive, should be accorded proper regard and are presumptive evidence of state law." *Commercial Union Insurance Co. v. Bituminous Casualty Corp.*, 851 F.2d 98, 100 (3d Cir.1988).

The Pennsylvania Supreme Court has not ruled on whether a person's intent plays a part in determining residency status for insurance law purposes. *Amica* provides some guidance. Defendants argue, however, that although *Boswell* pre-dates the Pennsylvania MVFRL, the construction of "residence" should be resolved by reference to cases under the No–Fault Act. Both laws contain almost identical definitions of "insured."[6] Nothing in the MVFRL suggests that the Legislature intended to employ a term different from that used in the No–Fault Act. Moreover, the case law from other jurisdictions reflects the nearly universal reliance by state courts on evidence of a person's intent.[7] For these reasons, in predicting how the Pennsylvania Supreme Court would resolve this issue, it cannot be said with assurance that *Amica* would be followed.

It is unnecessary to resolve this question here. Even if *Amica*'s reasoning controls and decedent's intent were not considered,

---

**4.** *See Amica Mutual Insurance Co. v. Donegal Mutual Insurance Co.*, 376 Pa.Super. 109, 115, 545 A.2d 343, 346 (1988) (suggesting coverage may be limited by "words of refinement, such as 'legal' or 'permanent' which might suggest a less transitory meaning" to the word resident); *Nationwide Insurance Co. v. Frazier*, 39 Pa.D. & C.3d 254, 264 (Mercer 1986) ("Nationwide in this case had the opportunity to clearly define the term 'resident of your household,' but failed to do so").

**5.** Effective October 1, 1984 the Pennsylvania No–Fault Motor Vehicle Insurance Act, Act of July 19, 1974 (P.L. 489, No. 176), 40 P.S. § 1009.101 *et seq.,* was repealed and replaced by MVFRL, 75 Pa.C.S.A. § 1701 *et seq.*

**6.** In relevant part, the No-Fault Act defines "insured" as a "relative of a named insured ... if ... in residence in the same household with a named insured." 40 P.S. § 1009.103 (repealed 1984). MVFRL defines "insured" as a spouse or

other relative of the named insured "if residing in the household of the named insured." 75 Pa.C.S.A. § 1702.

**7.** *See, e.g., Tencza v. Aetna Casualty & Surety Co.*, 111 Ariz. 226, 527 P.2d 97 (1974); *Whitten v. Allstate Insurance Co.*, 476 So.2d 794 (Fla. App.1985); *Sanders v. Georgia Farm Bureau Mutual Insurance Co.*, 182 Ga.App. 279, 355 S.E.2d 705 (1987); *Johnson v. Payne*, 549 N.E.2d 48 (Ind.App.1990); *Clark v. Harris*, 522 So.2d 673 (La.App.1988); *McCance v. Farmers Insurance Co.*, 783 S.W.2d 467 (Mo.App.1990); *Waller v. Rocky Mountain Fire & Casualty Co.*, 272 Or. 69, 535 P.2d 530 (1975); *Hawaiian Insurance & Guaranty Co., Ltd. v. Federated American Insurance Co.*, 13 Wash.App. 7, 534 P.2d 48 (1975); Annotation, "Who is 'Member' or 'Resident' of Same 'Family' or 'Household' Within No-Fault or Uninsured Motorist Provisions of Motor Vehicle Insurance Policy," 96 A.L.R.3d 804 (1979 & Supp.1987).

the credible evidence does not favor Nationwide. That decedent kept numerous personal items at the Providence Road apartment "does not compel a conclusion that she resided there as a matter of physical fact. Rather, it lends support to the conclusion that she *had* lived there." *Amica*, 376 Pa.Super. at 120–21, 545 A.2d at 349. Even if evidence of her intent is irrelevant and residence is purely a matter of physical fact, "these considerations are not pertinent to the present issue." *Id.*

A precise definition of "regular" or "actual" residence remains elusive.[8] However, the evidence given by the apartment manager must be accorded great weight regardless whether emphasis is placed on intent or physical facts. Although this witness had been the apartment manager since 1980 and, as such, must have known decedent and Dawn, she appears to have been disinterested and truthful. Once her testimony is credited, the facts become clear that decedent at the time of her death physically resided in her daughter's household. Accordingly, defendants are entitled to the stacking of underinsured motorist benefits.

---

**8.** "Any ambiguity in insurance policy terms must be construed in favor of the insured." *Amica*, 376 Pa.Super. at 113, 545 A.2d at 345. *See also State Farm Insurance Co. v. Bullock,* 316 Pa.Super. 475, 463 A.2d 463 (1988); *Krager v. Foremost Insurance Co.,* 304 Pa.Super. 390, 450 A.2d 736 (1982).