State, ex rel. John H. Mickey et al., Relators, v. W. A. Selleck et al., Respondents.

Filed June 8, 1906.   No. 14,664.

1. **Schools:** Children of State Officers. Under section 2, subd. 14, ch. 78, laws 1881, as amended by section 6, ch. 62, laws 1899, state officers, living in Lincoln during their terms of office, may send their children of school age to the public schools of the Lincoln district without paying tuition, even though they retain their legal residence elsewhere.

2. ————: TEMPORARY RESIDENTS. If a family, or the person or persons having the legal custody and control of children of school age, remove to and live in a school district other than the district of their legal residence, and such removal is not for the purpose of obtaining school privileges, but is principally from other motives, such children are entitled to free school privileges while so living in the district.

ORIGINAL application for a writ of mandamus to compel respondents to admit children of relators to the public schools. *Writ allowed.*

*Norris Brown, Attorney General, W. T. Thompson* and *W. B. Rose,* for relators.

*Clark & Allen, contra.*

SEDGWICK, C. J.

The relators filed their petition in this court to obtain a peremptory writ of mandamus against the defendants, who are members of the board of education of the school district of Lincoln, to admit the children of relators in the public schools free of tuition. The relators are respectively the governor of the state and the superintendent of public instruction. A general demurrer was filed to the petition. The constitution requires the governor and other specified state officers to "reside at the seat of government during their terms of office." Const. sec. 1, art. V. The state superintendent of public instruction is not included in this requirement, but the duties of his office are such as to make it more convenient and suitable for him to reside at the capital of the state, and he has during the incumbency of the office resided in the city of Lincoln with his family, and continues so to do. Both of these state officers have maintained their legal residences respectively at their former homes, not within the city of Lincoln. They have children of school age and desire that they attend the public schools. Section 2, subd. 14, ch. 78, laws 1881, provided: "That all schools organized within the limits of

said cities shall be under the direction and control of the boards of education authorized by this subdivision. Such schools shall be free to all children between the ages of five and twenty-one years, whose parents or guardians reside within the limits of said district." An act of the legislature in 1899 was entitled: "An act to provide free attendance at public high schools of nonresident pupils; to provide for the expense thereof, and to amend section 3 of subdivision 6, sections 2 and 7 of subdivision 14, and 2 of subdivision 17, chapter 79 Compiled Statutes of Nebraska for 1897, and to repeal said original sections as now existing." Laws 1899, ch. 62. The main purpose of the act was to establish free public high schools, and to allow nonresidents to attend them. By this act the section above quoted was amended to read as follows: "That all schools organized within the limits of said cities shall be under the direction and control of the boards of education authorized by this subdivision. Such schools shall be free to all children between the ages of five and twenty-one years, whose parents or guardians live within the limits of said district, and all children of school age nonresidents of said district who are or may be by law allowed to attend said schools without charge." Laws 1899, ch. 62, sec. 6. It will be noticed that the amendment consists in inserting the word "live" in place of the word "reside" in the second sentence of the section, and adding to the section the words "and all children of school age nonresidents of said district who are or may be by law allowed to attend said schools without charge." This last clause was clearly added to the section in view of the other provisions contained in the act of 1899. No such reason existed for substituting the word "live" in place of the word "reside" in the body of the section. A reason can be given for this change, if we suppose that the legislature intended that *bona fide* inhabitants of a school district might have the benefit of free public schools for their children, and desired to remove all doubt upon that question, considering that the word "reside" might be construed to apply only to those who

were domiciled in the district, and were maintaining a legal residence therein for all purposes. This change must have been made out of an abundance of caution. The word "reside" in the section as it was originally would not necessarily be construed to mean a legal residence as distinguished from actual inhabitancy. The exact meaning to be given to the words "reside" and "residence" depends oftentimes upon the connection in which they are used, and upon the general purposes of the legislation in which they may be employed. The policy of our state is to furnish free schools for all children of school age, and to compel unwilling parents to give their children the benefit of these schools. We are satisfied with the language used upon this point in *McNish v. State,* 74 Neb. 261. Our school law does not contemplate that families will be broken up for the purpose of sending children to the common schools. It was necessary for these officers to be at the state capital, and the allegations of the petition show that they live in Lincoln within the meaning of the school law.

2. In *State v. School District of City of Superior,* 55 Neb. 317, the relator "owned a farm in Kansas and had resided thereon with his family as a home for many years." Every fall, for several years, he had moved his family and a portion of his household goods to the city of Superior in this state "to permit his children to attend the public schools of that city, and at the close of the school year they moved back to their farm in Kansas, where they remained until the beginning of another school year." The main fact, then, upon which the decision depended was that the relator had taken his children to the city of Superior solely for the purpose of sending them to school; and it has been held that such action would be a fraud upon the school district, and that the children of the relator under such circumstances might be required to pay tuition. Opinion of state superintendent of Wisconsin, quoted in *State v. Thayer,* 74 Wis. 48. This case is cited and other portions of the opinion of the superintendent quoted from

with approval in *McNish v. State, supra.* This appears to be a just distinction. If the family is removed temporarily to the school district for the principal purpose of obtaining the advantages of the school without expense to the family, the school authorities may protect the district from such imposition. If the family, or the person or persons having the legal custody and control of children of school age, remove to and lived in the school district principally from other motives than obtaining the privilege of the schools for their children, even though their stay in the school district is not expected to be permanent, such children should not be deprived of the benefits of school privileges while so living in the district. If the removal to the district is solely for the purpose of obtaining school privileges, still if the legal residence of the family is actually changed to the school district, whatever the motive may be for so doing, there can be no doubt of the right of the children to school privileges. It was upon this ground that the relator in *State v. School District of City of Superior, supra,* claimed school privileges for his children. He presented to the court the issue as to whether he had actually changed his legal residence to Superior, and it was that question that was discussed by the court.

The respondents should have admitted these children into the public schools without charge for tuition. The facts are fully stated in the petition for the writ, and upon the argument it was understood that the respondents had no further defense to make. The relators therefore are entitled to a peremptory writ upon this application.

WRIT ALLOWED.