## No. 13,028.

FANGMAN ET AL. *v.* MOYERS.

(8 P. [2d] 762)

Decided February 23, 1932.

Mr. ALBERT L. MOSES, for plaintiffs in error.

Messrs. PILCHER & MOYERS, for defendant in error.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

Plaintiffs in error are hereinafter referred to as the district and Gray; defendant in error, Billy Moyers, as Billy, and his father and next friend as Moyers.

Billy brought injunction against the district to restrain it from excluding him from school privileges at the Hooper High School, and against Gray, the district's bus driver, to restrain him from denying the necessary transportation. To review a judgment entered against them the district and Gray prosecute this writ and ask that it be made a supersedeas.

Moyers, a lawyer, came to Alamosa from Georgia in September, 1930, rented a room in that city, taking his meals at various restaurants, and began the practice of law. In July following he placed Billy in the home of one Swift, a resident of the Mosca School District, under an arrangement by which the cost of Billy's maintenance was to be paid in part by his work and the balance in cash. He was to become a member of the Swift family and be treated exactly as the Swift children. This for the sole purpose of giving him a home with desirable influences and surroundings and with no special reference to school privileges. Billy was of high school age and the Mosca district maintained no high school. It had, however, entered into an arrangement with the Hooper district, adjoining, by which the latter's high school privileges were extended to its pupils for a consideration of $9 per month per pupil, plus cost of books which were furnished by the Hooper district. This under the provisions of subdivision 15, section 8333, C. L. 1921. A Mosca district bus, driven by Gray, transports its pupils to and from the Hooper High School. After Billy, as a Mosca district pupil, had attended the Hooper school for some time school privileges were withdrawn from him under the claim that he was not entitled thereto because his school residence was in Alamosa. This suit followed. The sole question here presented is the district

of Billy's residence for school purposes. If there be any question of technical defect in the pleadings presenting that question such defect has been waived.

■■ Section 8346, C. L. 1921, as amended by chapter 157, p. 637, S. L. 1927, provides for the taking of a school census (§8353 Id.), for its correction by the county superintendent of schools, and sections 8280 to 8283, Id. for the apportionment of school funds based thereon. In said section 8353, we find this language: "The residence of an unmarried person of school age shall, in all cases, be held to be identical with the bona fide residence of the parent or guardian of such person, providing that such parent or guardian be a resident of the state." The district's principal argument is based upon this language, and the conclusion is drawn therefrom that Billy must be held to be a resident of Alamosa because that is the residence of his father. It seems clear to us, however, that this sentence is merely intended as a guide in making up the required census and has nothing to do with "residence" as applied to school privileges; otherwise these would often be denied to those most in need of them and least able to provide them. It is unquestionably true that *"generally speaking* domicile and residence mean the same thing" (*Kennedy v. Ryall,* 67 N. Y. 379, 386); that "in general children whose parents are nonresidents of a district are not permitted to attend the schools therein" (25 Am. and Eng. Enc. of Law [2d Ed.] p. 22); and that children "temporarily" with relatives in one district yet have their school residence in the district where their only living parent resides (*Hudson v. Mattingley,* 69 Colo. 528, 195 Pac. 113). But Billy's residence in the Mosca district cannot properly be called "temporary," nor do the facts surrounding that residence bring it within the "general" rule referred to.

■ It often happens that the apportionment of school funds to the school census will not work out with mathematical accuracy. It could not unless families were forbidden to change residence from one district to an-

other during the school year save at the price of school privileges. If the school residence of all minors be confined to the district of the residence of parents or guardians, the helpless inmates of charitable institutions and children abandoned by parents and given a home by others, would often be the victims of this harsh construction. That, under the facts of this case, the school residence of a child may be other than that of parents or guardian see 56 C. J., p. 809, §986; *McNish v. State*, 74 Neb. 261, 104 N. W. 186; *State ex rel. Mickey v. Selleck*, 76 Neb. 747, 107 N. W. 1022; *State ex rel. Smith v. Board of Education*, 96 Wis. 95, 71 N. W. 123.

Our state Constitution provides: "The general assembly shall, as soon as practicable, provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state, wherein all residents of the state, between the ages of six and twenty-one years, may be educated gratuitously." Sec. 2, art. IX, Colo. Const. Comparing this with a similar provision of the state Constitution of Nebraska, and considering the similarity of the facts here to the facts in the McNish case, supra, we think the Supreme Court of that state had its feet firmly on the ground when it said therein—page 263:

"Now, the question arises as to whether section 2, supra, of our statutes is to be narrowly and technically construed for the purpose of shutting the doors of the school houses in the faces of many of the little boys and girls of the city and turning them out into the streets and by-ways, to grow up in idleness and ignorance, or whether it shall be liberally and broadly interpreted in the spirit of the provisions of section 6, article VIII of our constitution, which says: 'The legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years.' Our view of the case is fitly expressed in the language of state superintendent Thayer of the state of Wisconsin, which is quoted with approval by the

Supreme Court of that state in State v. Thayer, 74 Wis. 48, 41 N. W. 1014, and is as follows:

" 'In the incidents of human life families are broken up and must be scattered, by the necessities of obtaining a livelihood, by death of one or both parties, or by abandonment of offspring, as in this case. Such children, as all others, are the wards of the state, to the extent of providing for their education to that degree that they can care for themselves and act the part of intelligent citizens. To secure these ends, laws relating to public schools must be interpreted to accord with this dominant, controlling spirit and purpose of their enactment, rather than in the narrower spirit of their possible relations to questions of pauperism and administration of estates.' "

Reason and precedent sustain the conclusion of the trial court. Had Billy been placed in the Swift home solely, or primarily, for school purposes a different question would be presented. We affirm this judgment on the fact, which we think fully supported by the record, that his "home" is there; that, save in a certain technical sense, he has no other, and hence that his residence or domicile for school purposes is there.

The judgment is accordingly affirmed.