STATE EX REL. SCHOOL DIST. NO. 1, NIOBRARA
COUNTY v. SCHOOL DIST. NO. 12, NIOBRARA
COUNTY, ET AL.

(No. 1777; Feb. 14, 1933; 18 Pac. (2d) 1010)

(Rehearing denied June 13, 1933)

The cause was submitted for the plaintiff and appellant on the brief of *Fagan* and *Miller,* of Lusk, Wyoming.

For the defendants and respondents, the cause was submitted on the brief of *Judson P. Watson* and *Frank A. Barrett,* of Lusk Wyoming.

RINER, Justice.

Plaintiff and Appellant, School District Number One of Niobrara County, Wyoming, brought an action in the District Court of that county against School District Number Twelve, also located in said county, to recover tuition fees for four school children who were admitted as pupils into the high school maintained by the school district first above mentioned. The parties will generally hereafter be referred to, the plaintiff and appellant as "District No. 1," and the defendant and respondent as "District No. 12," respectively. Failing to recover in the action below, the record has been brought here by the unsuccessful party, for review by direct appeal.

The amended petition of District No. 1 contained four separately stated causes of action which, except for the name of the pupil for whose tuition recovery was sought and the school year each attended said district's high school, are substantially identical. The children affected and their years of attendance are stated to be: Billy Magoon and Virginia Robinson, each for the school year 1928-1929; Barbara Browning and Lillian Baughn, each for the school year 1930-1931.

Summarizing and omitting formal parts, it is alleged that these children were all of school age, that they were residents of District No. 12, that they had completed the course offered in the district last mentioned, having passed the eighth grade examinations and were fitted to enter the high school of District No. 1; that demand was made on District No. 12 for the tuition due on account of the tuition fees for said children and that said district has refused to pay them; that on or about October 25, 1930, under the provisions of Ch. 64, Wyo. Session Laws of 1923, the Board of District No. 1 filed with the County Treasurer of Niobrara County an itemized statement of said indebtedness on account of tuition of each of these children, certified by the director and clerk of District No. 1. The sum of $150 for each pupil as the actual cost of maintaining the high school per pupil in said district is averred and judgment is asked in that amount—a total of $600.

The answer of District No. 12 was in substance a general denial coupled with special defenses that during the school years mentioned in the petition aforesaid, said district maintained a high school and provided adequate high school facilities for each of the pupils aforesaid; that during said school years, these children resided within District No. 1; and that none of said pupils presented to District No. 1 written statements of permission signed by the director and clerk or any member of the Board of

Trustees of District No. 12, authorizing said pupils to enter the high school of District No. 1. A reply filed denied the new material set out in this answer.

The cause was tried to the court with the result that a general finding in favor of District No. 12 and against District No. 1 was made upon which a judgment that the party last mentioned take nothing by its petition was entered.

On the trial, it was stipulated by counsel that during the school years 1928-1929 and 1930-1931 District No. 12 did not maintain a four-year high school, but that during the year 1928-1929 said district operated a high school for the ninth and tenth grades under a permit granted by the State Board of Education. Additionally, the County Superintendent of Schools of Niobrara County testified that this permit high school was conducted according to regulations during the school year 1928-1929, and the grades earned in that school were accepted in an accredited high school; also that she is the custodian of the certified records of the work performed in said permit high school, that the work was certified as standard, and that she accepted that certification; further, that such a high school is standardized and inspected by the State Department of Education and the work carried on under its direction.

The statute upon which District No. 1 relies for recovery of the tuition fees sued for is Ch. 22 of Laws of Wyo. 1921 as amended by Ch. 64 of Laws of Wyo. 1923, Sec. 1 thereof reading:

"All school districts within the State of Wyoming which do not maintain a four-year high school shall pay tuition for pupils of such district who have completed the course offered therein and who desire to attend high school in another district. The cost of tuition as hereinafter set forth shall be paid by the district in which the pupil resides from the funds of such district; provided, that in case payment is refused or neglected, the board of the

creditor district shall file with the county treasurer of the county in which the debtor district is situated an itemized statement of the amount of indebtedness certified by the director and clerk of the district, and the county treasurer of said county shall transfer the amount of such indebtedness from the funds of the debtor district to the funds of the creditor district.''

The contention advanced in support of the judgment below as regards the pupils Billy Magoon and Virginia Robinson is based on the language of the first sentence of Section 1 of the law as given above. It is said that the plain wording of the statute is that a school district not maintaining a four-year high school shall be liable for tuition for only those of its resident pupils who attend high school in another district and ''who have completed the course offered'' in their home district. We think this contention must be sustained. It is evident that the phrase last above quoted is not qualified in any way. Such a construction is, we think, in harmony with the obvious purpose of the statute; viz., to provide high school education for those pupils in a district who have successfully passed through its elementary school facilities. It could hardly be regarded as sensible that a district should provide at its expense standard and accredited instruction in one or more high-school grades and also be required to pay tuition for pupils who declined to avail themselves of the advantages thus afforded, but insisted instead on going into another district high school.

Referring to authorities, the case of Scott County Board of Education v. Crumbaugh, 213 Ky. 771, 281 S. W. 977, was one where appellee Crumbaugh sought by mandatory injunction to compel the Scott County Board of Education to pay the tuition of his son, eligible to high school at the Georgetown high school operated by the board of education of that place. The Kentucky statute read:

"That where an approved high school already exists that any high school pupil shall have the privilege of attending the school in the county which is most convenient; and that the county in which he resides shall pay the tuition of said pupil at the same rate as fixed for other high school pupils in said county."

The Scott County Board answered the plaintiff's petition, among other things, that during all times referred to in the petition, it maintained a high school in its Newtown school district very close to plaintiff's residence and that "the children of the plaintiff reside in the Newtown school district of Scott County; that they have reached only the ninth and tenth grades, which are the first two grades of high school; and that the defendant maintains at the village of Newtown in said school district a high school providing a course of study for pupils of the said grades, in which the plaintiff's children are entitled to enter, identical with the course of study furnished by the high school at Georgetown." The trial court sustained a demurrer to this answer. Reversing the judgment entered when the Scott County Board declined to further plead, the Appellate Court said in part:

"The act was intended to afford pupil children of a county an opportunity to attend a public high school without the payment of tuition, and, while it is the duty of the board of education to establish and maintain a high school in one of the methods pointed out by the Statutes at the county seat, supposedly in the center, and at the most convenient point of the county, where there are other high schools in the county meeting the requirements, eligible students living conveniently near such high school should not be entitled or permitted to leave a county high school and go to the county seat to attend high school, and thus entail upon the board of education additional cost."

Where it appeared that the home of a high school pupil was in a rural high school district which operated an accredited high school, in Oberhelman v. Larimer, 110 Kan.

587, 204 Pac. 687, it was held that her father could not send her to a city high school and compel the county to pay the tuition therefor, under a law reading:

"Whenever a community is remote from or is not convenient of access to a high school already in operation, and there is not a sufficient number of pupils of high-school advancement in such community to organize and maintain another high school, the board of county commissioners shall 'upon recommendation of the county superintendent of public instruction; pay the tuition, not exceeding two dollars per week or fraction thereof, for such pupil of high-school advancement in the most convenient high school to such community, but within the county or in the county adjacent thereto."

In disposing of the case on the point in question, the court said:

"This language restricts the operation of the law to a pupil who resides outside of a high-school district having a high school in operation and who resides within a community without a sufficient number of pupils of high-school advancement to organize and maintain another high school. The language does not mean that a pupil living in a high-school district that is maintaining a high school to which the pupil has the right to go without the payment of tuition, can, on account of inconvenience go to another high school more convenient, and the county be compelled to pay the pupil's tuition in the latter high school. If this construction of the statute be not correct, a crippled high-school pupil who uses crutches to assist him in walking and whose parents might be too poor to assist him in going to and from school, might, on account of the inconvenience in walking, if he could make arrangements in another high-school district, attend the high school in the latter district and the county be compelled to pay the tuition therefor; if this construction of the statute be not correct, any high-school pupil living in any high-school district in a county, who might find it more convenient to attend some other high school in the county, may attend the latter high school, and the county be compelled to pay the tuition therefor, although the pupil

might be living within a very short distance of the school building in the district of his residence; and if this construction of the statute be not correct, the majority or all of the pupils resident in one high-school district might attend the high school in any other district and the county be compelled to pay their tuition. None of these conditions is contemplated by the law. The law, rightly interpreted, means that a high-school pupil shall attend school in the district in which he resides and that he cannot attend school in any other district and have his tuition paid by the county. If the community in which the pupil resides is without a high school and there is a sufficient number of pupils of high-school advancement in the community to organize and maintain another high school, the pupil cannot go to any high school and compel the county to pay the tuition therefor.''

It would seem unnecessary to comment on the pertinent character of these decisions as touching the question involved in the instant case.

As it appears as a fact from this record that Billy Magoon and Virginia Robinson had not completed the course of study offered by District No. 12 at the time they entered the high school of District No. 1, the former may not be held liable to the latter for their tuition under the statute upon which reliance is here placed and the District Court's judgment in that respect is correct.

So far as the pupils, Barbara Browning and Lillian Baughn are concerned, their cases present other questions. It is stipulated as a fact in the cause that during the school year 1930-1931, no high school instruction was maintained within District No. 12. As heretofore indicated, the purpose of the statute (Ch. 22, Laws of Wyo. 1921, as amended by Laws of Wyo. 1923, Ch. 64) was to secure high-school instruction for those pupils whose home districts did not furnish such facilities, the tuition therefor to be ''paid by the district in which the pupil resides.'' Laws of Wyo. 1923, Ch. 42, declares that, ''The public schools of each school district of the state shall at

all times be equally free and accessible to all children resident therein over six and under the age of twenty-one years, subject to such regulations as the district board in each district may prescribe." The balance of the section deals with compulsory school attendance. The term "public school" includes a high school, 56 C. J. 168.

It is now argued that the two pupils last above named were actual residents of District No. 1 and hence, District No. 12 is not liable for their tuition. The facts presented by the record bearing on the point are substantially these: During the school year 1930-1931, Lillian Baughn boarded in Lusk with a Mrs. Rice who lived there; this she did during the five school days of each week, but went home during the week-ends; she and her family lived at Lance Creek in District No. 12 and her parents paid her board. Mr. C. C. Browning, called by District No. 1 as a witness, testified that Miss Baughn rode with them (meaning his wife, child, and himself) approximately every Friday night as they went back and forth from Lance Creek to Lusk; that she and the rest of her family lived at Lance Creek all of the time. During this same school year, Barbara Browning lived with her mother in Lusk in School District No. 1 during the school days of each week; her father rented the house where they stayed and partially furnished it, but to which he did not move his home household goods. The mother and daughter came out every Friday and lived in Lance Creek over the week-ends during all the school term. In his testimony on the subject, Mr. Browning, the child's father, also said that he had lived in Lance Creek, Wyoming, since June 1, 1928; that he is the office manager for a company there; that he owned personal property and paid taxes on it in that place; that he also votes and attends school district meetings there; that he worked steadily in Lance Creek during the entire school year aforesaid, and that he kept a fully furnished house at Lance Creek, his home.

In construing statutes dealing with the right of children to attend school as affected by the matter of residence, the courts have generally held that the residence entitling a child to school privileges is to be distinguished from domicile, the narrow meaning of the term "residence," for determining the right to vote or other kindred purposes, and the tendency is to give a more liberal interpretation of the term. Nevertheless, 24 R. C. L. 625 says:

"A parent going temporarily into a district to reside during the scholastic year, for the purpose of sending his children to the school of that district, is not a bona fide resident of the district, entitled to school privileges for his children without payment of tuition. On the other hand a child may be considered a resident of the district, no matter how recently he has come in, if he has come with the bona fide intention of remaining permanently."

And 56 C. J. 810-11 summarizes the result of the cases in this language:

"Free instruction in the district school, open to residents of the district only, cannot be claimed as matter of right by a nonresident child whose primary purpose in coming into a school district is to attend the public school therein, or by children of a person who comes temporarily into a district to reside during the scholastic year for the purpose only of sending his children to the school of that district, or by children of a person residing without a state and sending them into the state and acquiring a domicile for them, so as to entitle them to a free common school education therein, or by a child temporarily sojourning in the district but claiming a home outside the district, or by children boarded out in a boarding house in the district by parents living in another district under an agreement that reserved the right of the parents to take them back at any time."

In Barnard School District v. Matherly, 84 Mo. App. 140, it appeared that the defendant resided with his family on

his farm about three miles from the town of Barnard and outside the Barnard School District; that about the beginning of the school term, defendant with his family moved into town, rented a house, and sent his children to the public school there. He gave the note in suit for the tuition but pleaded that there was no consideration, asserting that he was legally entitled to send his children to the school in Barnard free of charge. The district contended that the defendant only moved into town temporarily to remain during the term of school for the only purpose of sending his children to school. Evidence tending to prove plaintiff's theory was excluded by the trial court and a judgment for the defendant given. Reversing this, Judge Ellison said in the course of his discussion of the case:

"In our opinion, to entitle one to school privileges for his children in the public schools he must *bona fide* reside within the school district. Coming temporarily within the district to reside during the scholastic year, for the purpose of sending children to the school of that district can not be allowed. If this defendant has such right, then all other citizens of Nodaway county, outside of Barnard, have, of course, the same right. The result would, therefore, be that that district could be called upon to support schools for the benefit of other distinct communities. This was not contemplated by the statute."

In State ex rel. School District No. 1 v. Thayer, 74 Wis. 48, 41 N. W. 1014, the facts were that a mother, a school teacher, had been deserted by her husband, and having no permanent home and being unable to keep her child with her, found a home for him in Waukesha, where he worked for his board. He had no other home or residence, not being sent there for school but for other controlling reasons. The mother, meanwhile continuing her vocation as a teacher, boarded in the city of Milwaukee. The Waukesha School District declined to give the child free schooling. The state superintendent to whom an appeal

from this ruling lay under the law of Wisconsin, held that the district had determined the matter incorrectly. Affirming the superintendent's ruling, the Supreme Court of the state said, in part: .

"We do not decide in this case, nor do we understand the learned state superintendent to decide, that the father or mother or other legal guardian of a minor can transfer such minor from one school district to another for the sole purposes of having the privileges of the public school of the district to which he may be transferred. The rule in such case is very clearly stated by the learned superintendent in the following language: 'Effort has been made to guard against the precipitancy of nonresidents to points where superior advantages exist and schools of high order are maintained, by holding that such children only are entitled to free tuition as are actually residing in the district *for other, as a main purpose, than to participate in the advantages which the school affords.*' 'This appears to be a just and equitable view to take, and one to which neither party should object.' "

The right of the children of certain state officers of the State of Nebraska to attend school without paying tuition in the capital city of Lincoln during the residence of their parents at that place in filling out their terms of office was involved in State ex rel. Mickey v. Selleck, et al., 76 Neb. 747, 107 N. W. 1022, and it was held that the children had that right even though the officers, their parents, retained their legal residence elsewhere in the state.

In State ex rel. Vale v. School District, 55 Neb. 317, 75 N. W. 855, where the owner of a farm, his domicile for many years, moved his family and a portion of his furniture to a nearby city in the fall temporarily for the purpose of educating his children and not to gain a new home, returning to the farm at the end of each school year with his family, it was held that his residence, so far as it controlled the right of his children to attend school without paying tuition, remained at the farm. The Ap-

pellate Court approved as proper an instruction given the jury in the case, to the following effect:

"If, however, you find that plaintiff and his family's residence in Superior was only with the object of obtaining temporarily the advantages of schools, and with the intention of returning or going to some other definite place as soon as such purpose should be accomplished, then such purpose of returning or going to some other definite place would, so long as it remained, prevent the acquiring of a residence in Superior."

Under these authorities which, judging by an extended examination of many decisions, seem to reflect the proper rules of law to be applied in cases of this kind, we are inclined to think that neither Miss Baughn nor Miss Browning were residents of School District No. 1 for school purposes, but remained as residents of District No. 12. Their residence in Lusk would appear to have been solely for the purpose of obtaining high school privileges there.

Our attention is directed to the provisions of Ch. 51, Laws of Wyo. 1923, which reads in part:

"The District Board shall have power to admit pupils from other districts and to remove pupils for disorderly conduct, or for mental or physical disability, of so serious a nature as to be detrimental to the welfare of other children in the school, and when pupils are admitted from other districts, the district board may, in their discretion, require a tuition fee for such pupils, based on cost per pupil of said district, provided, that no pupils shall be admitted and tuition charged therefor unless they present written statements of permission signed by the director and the clerk of the district, in which said pupil resides, and when elementary school pupils can be better provided for in other districts, or in other schools in the same district, the district board of both districts in which the pupils reside shall have power to pay, from the funds of the district tuition and all or part of the board and room."

Under this language, District No. 12 contends that, as it was not pleaded and proven in the case that the two pupils last above named presented to District No. 1 the "written statements of permission" prescribed by the law, no recovery of tuition may now be had on their account.

Under the school law of the State of Illinois which provided, in effect, that on approval of the county superintendent, any high-school pupil might attend a high school more convenient in some district other than the one in which he resided, where it appeared that a district lay in more than one county, in Board of Education of Onarga Tp., etc. v. Board of Education of Thawville Community High School, etc., 308 Ill. 231, 139 N. E. 398, it was held that a pupil residing in such a district must secure the approval of the county superintendents of all the counties involved before he could attend a high school in another district at the expense of his home district and that the pupils affected not having obtained such an approval, the Thawville District was not liable for their tuition.

Sec. 1 of Ch. 239 of the Laws of 1921 of Kansas, so far as pertinent to the point material here reads:

"That tuition shall be free in all high schools to pupils residing in the county where high schools are located. * * * That whenever a community is remote from or is not convenient of access to a high school already in operation, and there is not a sufficient number of pupils of high-school advancement in such community to organize and maintain another high school, the board of county commissioners shall upon recommendation of the county superintendent of public instruction, pay the tuition not exceeding two dollars per week or fraction thereof for such pupil of high-school advancement in the most convenient high school to such community, but within the county or in the county adjacent thereto."

Thereunder, it was held in Board of Education, etc. v. Board of Commissioners, etc., 119 Kan. 117, 237 Pac. 1055, in the language of the opinion filed therein:

"It was necessary for the county superintendent to recommend the payment of the tuition before the county commissioners were authorized to pay it. The evidence affirmatively showed that the county superintendent did not recommend the payment of the tuition which the plaintiff seeks to recover. For that reason, the plaintiff cannot recover."

Under the heading, "Conditions Precedent to Liability," 56 C. J. 824 uses this language:

"Under a statute making that requirement, the pupil's application for permission to attend a high school in an outside district must be approved by the home district before it can be held liable under the statute for the tuition charges, and the fact that the outside district made no effort to secure such approval because it thought the law requiring. it had been repealed does not alter the rule."

The contention of District No. 1 is that Chapter 51 quoted above deals only with elementary schools. An examination of its language leads us to think that the effect of the law may not be so limited. The phraseology employed in the first part of the statute is certainly broad enough to include high schools under the supervision of a district board. Reasoning logically from the authorities cited above and construing the act with Ch. 64, Laws of Wyo. 1923, supra, it is reasonable to conclude that the enactment requires "a written statement of permission" from the named authorities of the district in which the pupil resides before a liability for high-school tuition can arise against the pupil's home district.

The instant case is a good illustration of the serious consequences the legislature apparently sought to avoid

by approving such a statute. The proofs here show that District No. 12, during the school year of 1930-1931, made arrangements with School District No. 2, which maintained at Manville, Wyoming, an accredited high school, whereby District No. 12 would by means of free bus transportation furnished them by it, send its pupils qualified for high-school instruction to said District No. 2. The tuition charge thus contracted for was $50 per pupil. As heretofore indicated, the tuition charge per pupil in District No. 1 was $150 per pupil. The obvious purpose of the statute we are considering was to vest some measure of discretion in the officials of the district of the pupil's home touching the disposition of its school children in other districts. That this should be so is both right and fair. It is proper to assume that the officials of the home district could not arbitrarily refuse to issue any written permission at all—for this would be to disregard the plain requirements of Chapter 64, supra. Nevertheless, it seems to us, under this law, they would have the right to decide whether they should send their high-school students to another district where the expense per pupil is much higher than in a second adjoining district equally reasonably available for the purpose. Any other interpretation of this statute applicable to the situation presented, as we hold it is, would make it possible for a majority or even more of the pupils fitted for high-school training to select the most expensive high school available and thus cast a most unreasonable financial burden upon a district wholly unable to bear it.

The District Court was right in declining to allow a recovery for the tuition of the pupils Barbara Browning and Lillian Baughn. In view of the conclusions to which we have been led, as stated above, it is unnecessary for us to determine other questions argued and submitted by counsel in their briefs.

Finding no error in the judgment under review, it should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.