JOHN R. CASOLARI, Indiv. and as Special Adm'r of the Estate of Megan Casolari, Deceased, Plaintiff-Appellant, v. BOBBY J. PIPKINS *et al.*, Defendants-Appellees.

Fifth District   No. 5—93—0107

Opinion filed December 7, 1993.

David Y. Eberspacher, of Hefner & Eberspacher, of Mattoon, for appellant.

Douglas A. Enloe and Larry N. Sloss, Jr., both of Gosnell, Borden & Enloe, Ltd., of Lawrenceville, for appellee State Farm Mutual Automobile Insurance Company.

JUSTICE CHAPMAN delivered the opinion of the court:

John and Pamela Sue Casolari were divorced April 1, 1987. Pursuant to a marital settlement agreement, joint custody of their minor child, Megan Casolari, was ordered by the court. Physical custody and visitation was to be shared equally between John and Pamela Sue, with the child residing half of the time with her mother and half of the time with her father. On August 4, 1989, Megan Casolari was a passenger in a car driven by her mother, Pamela Sue Casolari. Their vehicle was involved in an accident in which both Megan and Pamela Sue were killed. On August 5, 1991, John Casolari, individually and as special administrator of the estate of Megan Casolari, filed a declaratory action requesting the court to declare Megan Casolari an insured under the uninsured motorist provision of his policy of insurance with State Farm Mutual Automobile Insurance Company. State Farm filed a motion for summary judgment, which the trial court granted. John Casolari appeals from the trial court's order denying his motion to vacate the order of summary judgment. We reverse.

The issue on appeal is whether Megan Casolari lived with her father for purposes of coverage under his State Farm policy. The policy in question defines the person or persons insured as including "the first person named in the declaration" and "their relatives." The word "relative" is defined in the policy as "a person related to you or your spouse by blood, marriage or adoption who lives with you." There is no definition of "lives with" within the body of said policy.

Where the terms of an insurance policy are clear and unambiguous, the language used will be given its plain and ordinary meaning. (*Murphy v. State Farm Mutual Automobile Insurance Co.* (1992), 234

Ill. App. 3d 222, 225, 599 N.E.2d 446, 448.) However, policy provisions are deemed ambiguous if they are subject to more than one reasonable interpretation. *Coriasco v. Hutchcraft* (1993), 245 Ill. App. 3d 969, 971, 615 N.E.2d 64, 65.

The term "lives with" was at issue in *Murphy*. In that case the decedent's father brought a suit for declaratory judgment against his own insurer to determine whether the underinsured motorist provision of the policy covered the decedent. At issue was whether the decedent was a "relative" of the insured as that term was defined in the insured's insurance policies. Relative was defined as "a person related to you or your spouse by blood, marriage or adoption who lives with you." The court found that the phrase "lives with" was ambiguous under the factual circumstances presented. The court explained that ambiguity is not limited to grammatical imprecision of a policy, because the particular factual setting of the insurance policy provides a framework for determining if the policy as executed is consistent with the parties' intent.

In the instant case, John testified that he was raised in Flora, Illinois, and during the marriage he and Pamela lived there. Two months after their divorce John accepted employment in the Chicago area, moved there, and has kept a residence there at all times for purposes of this case. After the divorce, but prior to moving to the Chicago area, John lived with his parents in Flora. He testified that his parents continue to live there and that he often returns to Flora to stay. John testified that at all times during which he maintained a residence in the Chicago, Illinois, area he also maintained a residence at his parents' home. He explained that he has always maintained a bedroom at their residence and that he keeps clothes, guns, and other items of personal property there. He also prepares and eats meals at his parents' home and bathes and spends the night there at least every other weekend. On several occasions he has spent two to six weeks consecutively at their residence. John testified that he maintains a residence in the Chicago, Illinois, area solely because he has employment there and it never was his intent to reside exclusively in the Chicago, Illinois, area.

State Farm argues that whether John kept a residence in Flora at his parents' home is irrelevant. We find it significant. A person can have only one domicile, or permanent abode, at a time; however, he may have several residences. (*Coriasco v. Hutchcraft* (1993), 245 Ill. App. 3d 969, 971, 615 N.E.2d 64, 65.) The evidence demonstrates that John frequently stayed at the Flora home. He maintained a bedroom there, kept clothing and personal items there, prepared meals there,

and considered the Flora home his permanent residence. A visit to a location does not prevent that location from being a residence. (*Coriasco*, 245 Ill. App. 3d at 972, 615 N.E.2d at 66.) Since there was evidence produced which tended to show that the Flora home was a residence of John's, we turn to the question of whether Megan lived with him while he was staying there.

As for the time John spent with Megan, he testified that while the marital settlement agreement provides for joint custody, he and Pamela never followed the decree. The decree provides that John and Pamela each have custody of Megan on an alternating three-month basis. John testified that in May of 1987, Megan lived with him part of the time and with Pamela part of the time. He explained, "Pam never restricted whether [*sic*] she was to have Megan and never restricted me seeing her any time I wanted and visa versa." From June through September of 1987, when John held a job in the Chicago area, he would visit Flora every other weekend. He testified that Megan stayed with him in Chicago for one week in August or September of 1987. "We would call Mom every night, but it wouldn't work [*sic*] very well if I would have pulled a three year old baby to Chicago and made her stay there with me. *** No, one week is the only time I ever brought her up there, and like I said, she was fine. She was fine for four days and then in the evening when it was time to go to bed she started missing her mother and then she cried, and I would coax her through and get her calmed down and we would get to bed, but the more I thought about it, the more senseless that I realized it was, to drag a three year old little girl to Chicago more to pacify me than her." John testified that during the summer of 1989, Megan stayed with him at his parents' home approximately four to five weeks. John testified that after he moved to the Chicago area Megan lived with him every two weeks in Flora for a three-day weekend. Megan kept clothing and toys at the residence in Flora and took her meals there when she came to stay with her father.

State Farm contends that while Megan is a relative of John, the time spent with her father is merely visitation time and she does not "live with" her father so as to provide coverage under the insurance policy. We disagree. Given the factual circumstances of the instant case, Megan was living with John at the time of the accident.

The term "lives with" in the definition of relative as used in the State Farm policy is ambiguous. There is no question that Megan was physically present at her father's residence on alternating three-day weekends. On at least two occasions she even spent a few weeks with her father. Megan kept clothes and toys at the Flora home. When she

stayed with her father she was subject to his care and custody. Notwithstanding John's unique circumstance of having two residences, Megan's regularly scheduled visits at John's Flora residence, under the facts presented, demonstrate that she was living with him for purposes of coverage under the State Farm policy. Pursuant to our authority to enter any judgment that ought to have been made in the trial court (134 Ill. 2d R. 366(a)(5)), we hereby grant summary judgment in favor of the plaintiff. This cause is remanded for further proceedings consistent with this opinion.

Reversed; judgment entered; and remanded.

WELCH and MAAG, JJ., concur.