**WYOMING INSURANCE GUARANTY ASSOCIATION, Appellant (Plaintiff),**

v.

**William F. WOODS, Appellee (Defendant).**

No. 93–170.

Supreme Court of Wyoming.

Dec. 20, 1994.

Bruce A. Salzburg of Herschler, Freudenthal, Salzburg, Bonds & Rideout, P.C., Cheyenne, for appellant.

Robert G. Pickering of Bailey, Pickering & Stock, Cheyenne, and Thomas H. Lambert, San Diego, CA, for appellee.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY,** and TAYLOR, JJ.

TAYLOR, Justice.

The certified question of law before this court is a consequence of a mobile society. The State of Wyoming established an insurance guaranty association to shield resident claimants or resident insureds from loss due to insolvent insurers. Now, in an era when many persons are no longer confined to one residence, the insurance guaranty association seeks to determine whether it must indemnify a loss suffered at the hands of an insured with multiple residences, including Wyoming. We have concluded that the legislative intent of the Wyoming Insurance Guaranty Association Act requires that a single "place of residence" be established at the time the insured event occurred. As a result, the certified question must be answered in the negative.

## I. QUESTION

The certified question of law from the United States District Court for the District of Wyoming inquires:

The Court notes that "residence" is not defined in the Wyoming Insurance Guaranty Association Act. WYO.STAT. §§ 26–31–101—117 (1991). The interpretation of "residence" is critical to the final disposition of this case. Specifically, did the Wyoming legislature intend for an individual claimant to be able to have multiple [residences] within the context of the Wyoming Insurance Guaranty Association Act?

## II. FACTS

In early 1989, William F. Woods (Woods), a San Diego, California attorney, considered purchasing a 1986 Pitts Model S2B aerobatics biplane (hereinafter the plane) on behalf

* Retired July 6, 1994.    ** Chief Justice at time of oral argument.

of his professional corporation. The plane was owned by Paul Entrekin (Entrekin) and based in Pensacola, Florida. Woods and Entrekin agreed that the plane would be flown to San Diego before completing the purchase. Entrekin maintained $100,000.00 in liability insurance covering any "permissive user" of the plane under a policy written by the Ohio General Casualty Company (Ohio General).

Paul Crowley (Crowley), a retired airline transport pilot, agreed to fly the plane from Pensacola to San Diego for Woods. On February 11, 1989, Crowley and Woods met with Entrekin at the Pensacola airport and inspected the plane. After completing the inspection, Crowley and Woods began the flight to San Diego. The trip started uneventfully with Crowley piloting under visual flight rules. However, about one hour and fifty minutes into the flight, the plane ran out of fuel and crashed about five miles from the community of Walker, Louisiana. Crowley admitted that during the last half-hour of the flight, he had been unable to see a fuel quantity gauge and had failed to reset another fuel control device.

Woods suffered a fractured femur and other injures in the crash. He was unable to work full-time for about one year. Crowley was not injured, but the plane was a total loss. Woods made a claim for damages with Ohio General.

On June 27, 1989, Ohio General filed a declaratory judgment action in the United States District Court for the Northern District of Florida to determine if coverage existed under its policy with Entrekin. The court determined that Ohio General had a duty to defend and indemnify Entrekin and Crowley for any liability they might have for the injuries suffered by Woods. *Ohio General Ins. Co. v. Woods*, No. 89–30177RV, slip op. at 16 (N.D.Fla. June 25, 1991). By the time the court issued its decision, however, the Ohio Department of Insurance had instituted proceedings to declare Ohio General insolvent. On February 15, 1991, the Department of Insurance of the State of Wyoming revoked Ohio General's Certificate of Authority to do business in Wyoming. Prior to that, Ohio General had been a member, in good standing, of the Wyoming Insurance Guaranty Association (the Association).

Before Ohio General was placed in the hands of insurance regulators, Woods filed a civil action in the Superior Court of the State of California, County of San Diego, seeking compensatory damages from Crowley and Entrekin. During pretrial proceedings, Entrekin was dismissed from the action for lack of personal jurisdiction. Before trial, Crowley agreed to pay Woods $40,000.00 for a covenant not to execute any judgment from the California proceedings against Crowley's personal assets. Furthermore, Crowley assigned any indemnification or other rights he might have held under the Ohio General policy to Woods. In a trial to the court, Woods was awarded a total of $1,396,993.56 in damages from Crowley. *Woods v. Crowley*, No. 620299, slip op. at 2 (Cal.Sup.Ct. Jan. 31, 1992).

One of the documents Crowley executed in conjunction with the California civil proceeding assigned to Woods the rights to any claim Crowley may have against the Association. On February 24, 1992, Woods filed a claim, individually and as the assignee of Crowley, with the agent of the Association. Woods alleged that the Association owed a statutory duty to indemnify a loss resulting from the actions of a Wyoming resident, Crowley, who was the insured of Ohio General, an insolvent insurer.

Crowley is a person with multiple residences. At the time Crowley was hired by Woods to fly the plane from Pensacola to San Diego, Crowley was living in California but was a resident of both California and Wyoming. Crowley owned a home in Malibu, California and another home in Smoot, Wyoming. Typically, Crowley spent approximately six months of the year in California, during the winter and early spring, and six months of the year in Wyoming, during the summer and fall.

As a part of his multiple residence lifestyle, Crowley had motor vehicles registered in both California and Wyoming. However, his driver's license was issued by Wyoming. Crowley maintained checking and savings accounts at financial institutions in both California and Wyoming. Because his pension

income was earned while working in California, Crowley was required to pay state income taxes there. Since Crowley stayed in Wyoming during the fall hunting season, Crowley voted in Wyoming. Crowley also obtained hunting licenses in Wyoming. The pilot's license issued to Crowley listed his address, at the time of the accident, as Malibu.

On August 6, 1992, the Association filed a declaratory judgment action in the District Court for the First Judicial District of Wyoming. The Association sought a declaration from the court that Woods was judicially estopped by admissions in the prior civil actions in Florida and California from claiming Crowley was a resident of Wyoming. The action was removed to the United States District Court for the District of Wyoming. Woods filed a counterclaim seeking payment of the $100,000.00 policy limit of the Ohio General policy, pre-judgment interest, attorney's fees and costs. During the pendency of this action, the California Insurance Guaranty Association denied coverage because Ohio General had never qualified to do business in that state. After extensive pretrial proceedings and motions, the certified question was presented to this court.

### III. DISCUSSION

The Association was created by the Wyoming Insurance Guaranty Association Act, Wyo.Stat. §§ 26–31–101 through 26–31–117 (1991) (hereinafter the Act). The Act, as adopted in Wyoming in 1971, is based upon the Post–Assessment Property and Liability Insurance Guaranty Association Model Act (the Model Act) prepared by the National Association of Insurance Commissioners (N.A.I.C.) in 1969. *District of Columbia Ins. Guar. Ass'n v. Algernon Blair, Inc.*, 565 A.2d 564, 565 (D.C.App.1989); 1 N.A.I.C. Proc. 253 (1970). The Model Act was promulgated as an opposition response to federal legislation which sought to protect the public from loss due to insolvent insurers. 2 N.A.I.C. Proc. 549–52 (1969). Instead, the N.A.I.C. recommended a program in each state to establish a means to guarantee the payment of claims against insolvent insurers. *Id.*

The Act creates an involuntary nonprofit unincorporated legal entity, the Association, whose members are insurers qualified to transact business in Wyoming. Wyo.Stat. § 26–31–104(a) and (b). Each member contributes an assessment, based on a percentage of premiums from insurance policies written in Wyoming, to a fund which is used to pay claims. Wyo.Stat. § 26–31–107(a). When an insurance company is determined to be insolvent, the Association "steps into the shoes of the insolvent insurer." *Washington Ins. Guar. Ass'n v. Mullins*, 62 Wash.App. 878, 816 P.2d 61, 63 (1991). The Association is deemed the insurer to the extent of its obligation for covered claims and the Association then has all rights, duties and obligations of the insolvent insurer. Wyo.Stat. § 26–31–106(a)(ii). In addition, the Association is required to aid in the detection and prevention of insurer insolvencies. Wyo. Stat. § 26–31–112.

The purpose of the Act is to provide a mechanism for the payment of covered claims which avoids excessive delay in payment and avoids financial loss to claimants or insureds because of the insolvency of an insurer. *Wyoming Ins. Guar. Ass'n v. Allstate Indem. Co.*, 844 P.2d 464, 466 (Wyo.1992); *T & N PLC v. Pennsylvania Ins. Guar. Ass'n*, 822 F.Supp. 275, 280 (E.D.Pa.1993); *Algernon Blair, Inc.*, 565 A.2d at 565; 1 N.A.I.C. Proc. 253 (1970). The Act seeks to remedy the social consequences resulting from the insolvency of an insurer. "[E]very insurance company failure undermines public confidence in and the value of the insurance institution whose continued existence is the result of the public's desire and need to be secure from risk." Jon S. Hanson, *Drafting Model Post Assessment Guaranty Fund Legislation*, 1 N.A.I.C. Proc. 262 (1970). Therefore, as remedial legislation designed for the public's protection, this court must liberally construe the Act to achieve its purposes and strictly construe all exceptions to indemnification. *Houghton v. Franscell*, 870 P.2d 1050, 1052 (Wyo.1994); *People v. Platte Pipe Line Co.*, 649 P.2d 208, 212 (Wyo.1982); *Vigil v. Tafoya*, 600 P.2d 721, 724 (Wyo.1979). *See also Schreffler v. Pennsylvania Ins. Guar. Ass'n*, 402 Pa.Super. 309, 586 A.2d 983, 985 (1991) and 1 N.A.I.C. Proc. 254 (1970).

Generally, decisions of other courts offer persuasive support when questions arise concerning the proper interpretation of uniform laws or model acts. *B & W Glass, Inc. v. Weather Shield Mfg., Inc.*, 829 P.2d 809, 814 (Wyo.1992). Some courts have considered whether a corporation may have multiple residences under an insurance guaranty act. The results, however, lack uniformity.

In *Kroblin Refrigerated Xpress, Inc. v. Iowa Ins. Guar. Ass'n*, 461 N.W.2d 175, 179 (Iowa 1990), the court said that the Iowa Insurance Guaranty Association Act "appears to recognize only one residence" for an insured seeking to recover a claim against more than one insurance guaranty association. The court held that a corporation has only one residence which is its principal place of business. *Id.* The court in *Pennsylvania Ins. Guar. Ass'n v. Charter Abstract Corp.*, 790 F.Supp. 82, 87 (E.D.Pa.1992) agreed that a corporation could have only one residence under the Pennsylvania Insurance Guaranty Association Act, but found it unnecessary to decide if that residence would be the place of incorporation or the principal place of business. In *T & N PLC*, 822 F.Supp. at 284, the court determined that a corporation organized under the laws of England, with its principal place of business in England, did not meet the residence requirements of the Pennsylvania Insurance Guaranty Association Act. However, the court held that the residence of the parties making a claim against the corporation could be used to establish coverage. *Id.* at 286–89.

In *Eastern Seaboard Pile Driving Corp. v. New Jersey Property–Liability Ins. Guar. Ass'n*, 175 N.J.Super. 589, 421 A.2d 597, 600 (1980), the court determined that a corporation with its principal place of business in New Jersey had established residence under the New Jersey Property–Liability Insurance Guaranty Association Act. The court in *Alabama Ins. Guar. Ass'n v. Colonial Freight Systems, Inc.*, 537 So.2d 475, 476 (Ala.1988) reached a contrary conclusion when it held that a corporation's residence under the Alabama Insurance Guaranty Act was established by its place of incorporation.

In *McMahon v. Louisiana Ins. Guar. Ass'n*, 596 So.2d 1384, 1387 (La.App.1992), the court considered whether a corporation could have multiple residences under the Louisiana Guaranty Law. The court held that the Louisiana legislature only required a legal residence in the state to make a claim. *Id.* at 1388. "As long as the claimant or the insured legally resides in Louisiana, it is immaterial that either may also qualify for residence in a state other than Louisiana." *Id.* The court found that the corporation had established residency in Louisiana when it incorporated in the state, despite the fact its principal place of business was now located in Texas. *Id.* at 1389.

The various constructions given by these courts to the provisions of the Model Act offer only limited guidance. We do not find a persuasive consensus. Furthermore, we do not accept the argument that certified questions of law should be resolved by simply adopting the logic advanced in a particular line of decisions. *B & W Glass, Inc.*, 829 P.2d at 815.

Both Woods and the Association have suggested that guidance on the proper interpretation of the Act may also be found in a document styled as "Guiding Principles For Settling Disputes Between and Among Property and Casualty Insurance Guaranty Associations As to Responsibility For Claims" (hereinafter Guiding Principles). 1 N.A.I.C. Proc. 458–59 (1986). This document was prepared by the National Committee on Insurance Guaranty Funds in August of 1985 and submitted to the various state associations to resolve disputes involving the situs of claims. 1 N.A.I.C. Proc. 457 (1986). The Association became a signatory of the Guiding Principles document sometime after September 6, 1985. The Guiding Principles, however, offer little assistance to our task of discovering legislative intent. The Guiding Principles merely represent an agreement among the signatory insurance guaranty associations to resolve disputes in a particular manner. The Guiding Principles do not have the force and effect of law. We must, therefore, turn to the express language of the Act as adopted by the Wyoming legislature and apply our rules of statutory construction.

The intent of the Wyoming legislature in forming the Association must be as-

certained from the language of the statute which is viewed in light of its object and purpose. *Barcon, Inc. v. Wyoming State Bd. of Equalization,* 845 P.2d 373, 377 (Wyo. 1992). A statute is construed as a whole with the ordinary and obvious meaning applied to the words as they are arranged in paragraphs, sentences, clauses and phrases to express intent. *Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n,* 845 P.2d 1040, 1042 (Wyo.1993). If reasonable persons are able to agree on the meaning consistently and predictably, a statute is considered unambiguous. *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization,* 813 P.2d 214, 220 (Wyo.1991). Conversely, "a statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations." *Id.* at 219–20. When a statute is ambiguous, this court will apply general principles of statutory construction to discover legislative intent, including considering the statute's purpose and the public policy it is designed to facilitate. *Parker Land and Cattle Co.,* 845 P.2d at 1044. We presume the legislature enacts statutes with full knowledge of existing law and as part of a uniform system of jurisprudence. *Id.* (quoting *Civic Ass'n of Wyoming v. Railway Motor Fuels,* 57 Wyo. 213, 238, 116 P.2d 236, 245 (1941)).

The Act defines a "covered claim," in pertinent part, as:

> (ii) "Covered claim" means an unpaid claim which arises out of and is within the coverage and does not exceed the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if the insurer is an insolvent insurer and *the claimant or insured is a resident of this state at the time of the insured event* or the property from which the claim arises is permanently located in this state[.]

Wyo.Stat. § 26–31–103(a)(ii) (emphasis added). This definition states several conditions for a covered claim. First, the claim must arise out of and be within the coverage intended by an insurance policy issued by an insurer. Second, the claim must not exceed the coverage limit of the insurance policy. Third, the insurance policy must be a kind of direct insurance to which the Act applies.

*See* Wyo.Stat. § 26–31–102. Fourth, the insurer must be insolvent. Fifth, the "claimant or insured" must be a "resident" of Wyoming "at the time of the insured event" or the property from which the claim arises must be permanently located in Wyoming. The certified question requires us to consider, in detail, the legislative intent of the fifth condition.

A "covered claim" under the Act may be made by a "claimant or insured." Wyo.Stat. § 26–31–103(a)(ii). The use of the disjunctive "or" permitted the legislature to state, in plain language, that a claim may be filed by two distinct categories of persons. A "claimant," a person asserting a right, demand or a claim, Black's Law Dictionary 247 (6th ed. 1990), or an "insured," the person who obtained coverage or is otherwise covered by insurance. Black's Law Dictionary 808 (6th ed. 1990). The Act defines a person as "any individual, corporation, partnership, association or voluntary organization." Wyo.Stat. § 26–31–103(a)(vi).

Either the "claimant" or the "insured" must be a "resident" of Wyoming to make a "covered claim." Wyo.Stat. § 26–31–103(a)(ii). The Act, therefore, permits a foreign "claimant" to seek recovery when the "insured" is a "resident." *Algernon Blair, Inc.,* 565 A.2d at 568. Conversely, a foreign "insured" may also seek recovery when the "claimant" is a "resident." *T & N PLC,* 822 F.Supp. at 286–89. Unfortunately, the legislature did not define the term "resident" in the Act. The comments to the Model Act provide only equivocal guidance by suggesting residence should be determined by state law and the "'residence' of a corporation should not necessarily be equated with its domicile." 1 N.A.I.C. Proc. 254 (1970).

The legislature's failure to define the term "resident" in the Act makes it an ambiguous term which is subject to varying interpretations. *Allied–Signal, Inc.,* 813 P.2d at 220. *Accord, Kroblin Refrigerated Xpress, Inc.,* 461 N.W.2d at 177–78 (holding under the Model Act as adopted in Iowa the failure to define "resident" resulted in ambiguity). *See also* Willis L.M. Reese and Robert S. Green, *That Elusive Word, "Residence,"* 6 Vand.L.Rev. 561, 563 (1953) (recog-

nizing that "residence" is a word with extremely uncertain meaning as used in statutes). Therefore, we must construe the meaning of a "resident" in light of the context of its use and with consideration for the purposes of the Act. *Parker Land and Cattle Co.*, 845 P.2d at 1044. *Accord, Catalanotto v. Palazzolo*, 46 Misc.2d 381, 259 N.Y.S.2d 473, 476 (N.Y.Sup.1965) (holding that the terms "residence," "resident" and "reside" do not have a uniform meaning in statutes so a meaning must be construed from the context of their use).

Wyoming has recognized a distinction between the "residence" of a person and the "domicile" of a person. *State ex rel. School Dist. No. 1, Niobrara County v. School Dist. No. 12, Niobrara County*, 45 Wyo. 365, 376, 18 P.2d 1010, 1013 (1933). "Residence" is given the more liberal interpretation. *Id.* "Domicile" is narrowly defined: " 'the domicile of a person is the place where he has voluntarily fixed his habitation with a present intent to make it either his permanent home or his home for the indefinite future.' " *Boswell v. South Carolina Ins. Co.*, 353 Pa.Super. 108, 509 A.2d 358, 362 (1986) (*quoting In re McKinley's Estate*, 461 Pa. 731, 337 A.2d 851, 853 (1975)). As a result of this narrow definition, a person may have a "domicile" in only one place at a time; however, the same person may be a "resident" of several places at the same time. *Casolari v. Pipkins*, 253 Ill.App.3d 265, 191 Ill.Dec. 580, 582, 624 N.E.2d 429, 431 (1993); *In re Yap*, 39 Misc.2d 835, 241 N.Y.S.2d 976, 979 (N.Y.Sup. 1963); *Switzerland General Ins. Co. v. Gulf Ins. Co.*, 213 S.W.2d 161, 163 (Tex.Civ.App. 1948).

We assume that in using the term "resident" in the Act, the legislature understood the difference between the terms "domicile" and "resident." *Parker Land and Cattle Co.*, 845 P.2d at 1044; *L.U. Sheep Co. v. Board of County Com'rs of County of Hot Springs*, 790 P.2d 663, 669 (Wyo.1990). *Accord, Catalanotto*, 259 N.Y.S.2d at 476 (noting that the legislature is presumed to be aware of the difference between a "resident" and a "domiciliary"). If the legislature had intended to restrict the Act to a "claimant or insured" with a "domicile" in Wyoming, it would have

stated that intent in plain language. Therefore, the more liberal status of a "resident" is all that is required under the Act. This more liberal status is consistent with the purpose of the Act to avoid financial loss due to insurer insolvency.

The term "resident" has a primary meaning of "one actually living in a place for a time irrespective of domicile." *In re Yap*, 241 N.Y.S.2d at 978. *Accord, Hanson v. P.A. Peterson Home Ass'n*, 35 Ill.App.2d 134, 182 N.E.2d 237, 239 (1962). A person does not have to have the intent to make a permanent home in a state to be considered a "resident." *In re Yap*, 241 N.Y.S.2d at 978–79. Therefore, the ordinary meaning of the term "resident" is:

> Any person who occupies a dwelling within the State, has a present intent to remain within the State for a period of time, and manifests the genuineness of that intent by establishing an ongoing physical presence within the State together with indicia that his presence within the State is something other than merely transitory in nature.

Black's Law Dictionary 1309 (6th ed. 1990). Accordingly, an occasional hotel stay, a vacation stay at a resort, or an occasional overnight visit to a business premises does not establish a residence, "but a permanent or recurrent hotel residence or a habitual summer residence does qualify as a residence." *S. Axelrod Co., Inc. v. Mel Dixon Studio, Inc.*, 122 Misc.2d 770, 471 N.Y.S.2d 945, 952 (N.Y.City Civ.Ct.1983).

As used in the Act, the term "resident" is modified by the phrase "of this state at the time of the insured event * * *." Wyo.Stat. § 26–31–103(a)(ii). This modification states the point in time at which the status of a "resident" is determined. However, the phrase leaves unanswered the basic question of whether a "resident" under the Act may simultaneously be a "resident" of more than one state.

■ The legislature provided an answer in another provision of the Act which states, in pertinent part:

> (b) Any person having a claim which may be recovered under more than one (1) insurance guaranty association or its

equivalent shall *seek recovery first from the association of the insured's place of residence,* except that if it is a first party claim for damage to property with a permanent location, he shall seek recovery first from the association of the location of the property. * * * Any recovery under this chapter shall be reduced by the amount of recovery from any other insurance guaranty association or its equivalent.

Wyo.Stat. § 26–31–111(b) (emphasis added).

As used in the Act, "place of residence" is a term of art that designates a single locality. The primary meaning of the noun "place" is used to designate "an *occupied* situation or building." Black's Law Dictionary 1148 (6th ed. 1990) (emphasis added). The locality in the term is delineated by the prepositional phrase "of residence." As used in Wyo.Stat. § 26–31–111(b), "place of residence" is a singular term. The plural form of the noun "place" is "places." While an individual may have several "places of residence," the Act does not speak in those terms.

Settled common law has accepted that a "place of residence" for an individual means "a fixed and permanent abode and *dwelling place for the time being* as contradistinguished from mere temporal local residence." *Silvey v. Lindsay,* 42 Hun. 116, 120, 49 N.Y.Sup.Ct. 116, 120 (1886) (emphasis added). The accepted common law "place of residence" for a corporation is " '[t]he place where its principal office is located, *or* where its principal operations are carried on[.]' " *Baltimore & Yorktown Turnpike Road v. Crowther,* 63 Md. 558, 1 A. 279, 285 (1885) (*quoting* Boone, *Corp.* § 33) (emphasis in original).

■ We hold the intent of the legislature as found in Wyo.Stat. § 26–31–111(b) is to designate a single "place of residence" for a "claimant or insured" making a "covered claim" under the Act. The point in time to determine the "place of residence" is "at the time of the insured event." Wyo.Stat. § 26–31–103(a)(ii). Under the Act, the "place of residence" for an individual with multiple residences is established by finding that individual's single fixed and permanent abode and *dwelling place at the time the insured event occurred.* The "place of residence" for a corporation is established by the location of the corporation's principal place of business at the time the insured event occurred.

In answering a certified question, this court's role does not include fact finding. *Reliance Ins. Co. v. Chevron U.S.A. Inc.,* 713 P.2d 766, 769 (Wyo.1986). The United States District Court for the District of Wyoming retains jurisdiction to apply the applicable rules of law stated in this opinion to determine the "place of residence" of the "claimant" and the "insured" under the Act at the time the insured event occurred. *B & W Glass, Inc.,* 829 P.2d at 812.

■ Woods also attempts to structure constitutional challenges to the residency requirement of the Act which we need only briefly address. He broadly argues that a residency requirement under the Act offends the equal protection clause, U.S. Const. amend. XIV, § 1; the privileges and immunities provisions, U.S. Const. art. IV, § 2; and the right to travel, U.S. Const. amend. XIV, § 1. *See, e.g., Zobel v. Williams,* 457 U.S. 55, 60 n. 6, 102 S.Ct. 2309, 2312 n. 6, 72 L.Ed.2d 672 (1982) and *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 254–56, 94 S.Ct. 1076, 1080–81, 39 L.Ed.2d 306 (1974). The residency requirement does not offend these constitutional provisions. The funding assessment the Association makes on insurers must obviously be limited to members doing business in Wyoming. Therefore, a residency requirement for a "claimant" or "insured" to receive indemnification bears a rational relationship to the purpose of the Act and the need to preserve this finite fund. *See Hooper v. Bernalillo County Assessor,* 472 U.S. 612, 620, 105 S.Ct. 2862, 2867, 86 L.Ed.2d 487 (1985) and *Baldwin v. Fish and Game Commission of Montana,* 436 U.S. 371, 390, 98 S.Ct. 1852, 1863–64, 56 L.Ed.2d 354 (1978). Similarly, we are unable to perceive any burden on the right to interstate travel created by the Act since there is no waiting period to establish a "resident" status. *See Memorial Hospital,* 415 U.S. at 255, 94 S.Ct. at 1081.

## IV. CONCLUSION

The legislature passed the Wyoming Insurance Guaranty Association Act to protect

residents from financial loss due to insolvent insurers. The complex factual situation presented by this case discloses the potential boundaries of that protection. The transactions between Woods, Crowley and Entrekin have resulted in litigation in state and federal courts in Florida, Ohio, California, and Wyoming. As a result of these actions, an injured party has been awarded damages for which at least partial indemnification was once available from an insurer.

■ The certified question from the United States District Court for the District of Wyoming inquired, in pertinent part:

> Specifically, did the Wyoming legislature intend for an individual claimant to be able to have multiple [residences] within the context of the Wyoming Insurance Guaranty Association Act?

The answer is "no."